WADE LOVE v. JOHN BARBER.

The rule of law, as to estoppel in pais, is clear, that when one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring, against the latter, a different state of things as existing at the same time.

See this case for circumstances under which the judgment was reversed and a new trial ordered, on the ground that the evidence was not sufficient to sustain the verdict, where the question was a conflict between an old grant and a subsequent patent, and the patentee claimed that he was misled by lines marked on the ground, as the boundaries of the old grant, at the instance of the owner thereof.

Appeal from Rusk. Tried below before the Hon. William W. Morris.

The land for which this suit was brought, was described in the petition as follows, to wit : on the north-west corner of the Cordova league, and on the north side of said league, being the belt or strip of land supposed to contain one hundred and fifty acres, south of the old and well-marked league line, to wit : the true north line of the said Francisco Cordova league.

The plot of the Cordova league represented a square of about five thousand varas; the title being admitted was not given in evidence, and the field notes were not given; the

Surveyor, appointed by the Court to make a survey, found the original north-east corner plainly marked, also the original north and west lines, but at the intersection of said lines at the original north-west corner, he could not find any marks. He found the two corners made by Ham plainly marked as corners, with bearing trees marked F. T., which letters were understood in the vicinity to mean Frost Thorn.

The defendant did not introduce any evidence except that of Ham, which is stated in the Opinion, and the patent to Hollingsworth, which was dated in 1849. The survey by Ham was made in 1844, and that by Ross in 1845. Ross testified that he was employed by Thorn to divide the league into nine parts ; that he found the S. E. and S. W. corners, and ran the south line ; that he then run a line from the centre of the south line to the centre of the original north line ; that he did not look for the N. E. nor N. W. corners ; that he saw Ham's line where he crossed it in running his division line from south to north. Hollingsworth's patent called to begin at the S. E. corner of a 640 acre survey for H. B. Dance, on the north line of Francisco Cordova's league, and was for four hundred and twenty-eight acres. It was issued upon a certificate granted in 1841. Ham's survey stopped five hundred varas short of the original corners, and cut off four hundred and forty-two acres, about one hundred and fifty of which, out of the north-west corner of the league, were included in the patent to Hollingsworth, and the defendants resided on that part. It did not appear when Hollingsworth's location was made.

The Judge instructed the jury that if Frost Thorn by his agent Ham, caused a re-survey of said land, and said Ham did make such survey, and by so doing established a line and two corners south of the original survey, and marked on a tree at each of two said corners the initials of Frost Thorn, causing the belt or tract of land between said lines and out of the survey as made by Ham, and that by such re-survey Hollingsworth was induced to locate said land, and obtained a patent

for the same, the defendant has the better title, and your ver-
dict should be for him.   But if the facts above set forth have
not been made out by proof to your satisfaction, your verdict
should be for the plaintiff.

The plaintiff requested the Judge to charge the jury, that
Thorn was not bound by Ham's survey unless he either express-
ly authorized him to make the re-survey as he did, or approved
of it when made ; but the Judge refused to do so, and instruct-
ed the jury further, that if Thorn gave Ham general authority
to re-survey and re-mark the league, he was bound by it, in
case Hollingsworth was mislead by such re-survey.

*Henderson & Jones* for appellant. The law by which we are
to be governed in this case, cannot be better expressed than
in the words of Lord Denman, in the case of Pickard v. Sears, 6
Adolph & Ellis, 469, 474.

First, it is not averred, in the plea, that Hollingsworth be-
lieved that Thorn had abandoned the land in question ; nor
that Hollingsworth had located the land under such belief.
The plea does not state that Hollingsworth's file or location
was made subsequent to the re-survey of Thorn's land ; but
simply that the re-survey was made previous to " the inception
of defendant's title." Let it be observed that the defendant
exhibited no proof of any title in himself, but exhibited only
the patent to Hollingsworth.

Secondly, the proof is more deficient than the plea ; for
there was not only no plea that Thorn's re-survey took place
before the file and survey of Hollingsworth, or any title in the
defendant ; and that H. or the defendant knew of the change
in the lines on the second survey, and believed that Thorn inten-
ded to abandon the land left on the second survey ; but there was
no proof that Hollingsworth's survey ran to the newly-marked
north line of Thorn, or stopped at the old line ; there was not
even any proof that Hollingsworth's survey was made subse-
quent to the re-survey of Thorn. The patent of Hollingsworth

calls to begin on the *north line* of Francisco Cordova's league, (which was the Thorn claim ;) but which north line was this ? the original line, the real line of the *Cordova* league, as it was on file and plot in the General Land Office, whence the patent to Hollingsworth issued ? or the line subsequently run and and marked by F. J. Ham ? This is the question which it behooves the appellee to solve ; but he did not do so. Here were two lines, one of which was called for ; now which was it ? The appellee did not answer. He did not show, as he should have done, (in order to show that Hollingsworth had acted on the belief that Thorn had abandoned the land in question,) that Hollingsworth's survey, when made, began at the new line, rather than at the old ; nor did he even help his case with a presumption that might be attempted to be drawn from showing that the survey was made subsequent to the new survey of Thorn's land. But if Hollingsworth's location was made subsequent to the survey of Thorn's lands by Ham in 1844, was it not also subsequent to the survey and sectionizing of the same land by Ross, who was employed by Thorn to survey and sectionize the same land in the year following ?—how many months is not shown.

Thirdly, supposing Hollingsworth to have included the land in question in his survey, there was yet no proof that he did so under the belief that Thorn had abandoned this land, caused by the words or acts of Thorn, or any one authorized by him so to speak or act. The appellee read the deposition of F. J. Ham, on the trial ; but to this it is to be objected, that there is no evidence that Hollingsworth made his location after the survey by Ham, and thus made it on the faith of that survey. But supposing, for argument's sake, that Hollingsworth's location was made after the survey by Ham, was it also made before the survey and sectionizing of the Cordova league by Ross ? If so, then the wrong impression that might have been created by the survey of Ham, was corrected ; at least this possible impression was rendered so far doubtful,

that, before making his location, Hollingsworth should have inquired further for certainty.

But further as to the authority of Ham to make a new survey for Thorn, and to deprive him of a part of his land. Does the commission to " re-survey and re-mark" an old survey which has been patented, where from time the lines and corners are becoming indistinct, and the evidence of them is in danger of being lost, authorize the person so employed, to establish a new and different survey, (for such is the character of the survey by Ham,) and to deprive the owner of the property of a part of his land. So thought the surveyor, and so thought the locator, and so thinks the Judge who tried this case in the Court below ; but we respectfully submit that it is otherwise.

*S. P. Hollingsworth*, for appellee. The establishment of the new line by plainly marking it and the new corners, was an abandonment of the land north of said line. If not an abandonment, it operates as an estoppel of said Thorn, and those claiming under him, from setting up title to the land north of said line, against one claiming by subsequent location and patent.

If Thorn intended to repudiate the acts of Ham, he should have gone upon the ground and obliterated his marks—the corners at least. He occupies the position of one who stands by and sees his land sold to an innocent purchaser, and fails to disclose his title.

And again we ask, will this Court establish the rule that a man shall go into the woods, run lines, mark them and mark corners, and put the initials of his name upon corner trees, and do every thing that could possibly be done by a man to establish the lines and corners of his land, and give notoriety to them, and afterwards, to wit, say ten or fifteen years afterwards, be allowed to come into Court and say that he was not

in earnest in running those lines and marking those corners ? We think not. If such a rule is to prevail, then under our landed system no man is safe in his rights; and this too, when the original corners are not to be found upon the ground. The surveyor says he could not find any north-west corner to the old survey.

LIPSCOMB, J. This suit was brought by the appellant against the appellee, to recover land. There was a verdict for the defendant ; a motion for a new trial overruled ; and the plaintiff appealed. The plaintiff showed title under a grant to Francisco Cordova, through Frost Thorn ; the defendant, under a patent in favor of Hollingsworth, of a date subsequent to the grant under which plaintiff claimed title. From the state of the pleading, it might be well questioned whether the patent, under which appellee claims title, makes any conflict in the rights of the parties ; as the patent calls for land west of the north boundary of Cordova's grant, thereby recognizing the grant. But we do not choose to dodge the merits of the case, and send it back upon the state of the pleading, leaving the merits untouched, to be again litigated after the pleading has been amended. There is no question about the validity of the grant to Cordova, nor about the boundaries thereof, as called for by the grant. But it is alleged that Thorn, under whom the plaintiff claims, caused those lines to be contracted by a re survey, leaving out the land in controversy, which was located by Hollingsworth, and on which the patent to him issued, and that Thorn and the plaintiff who claims under him are estopped from setting up the lines of the original survey of the grant, against the rights of the defendant, as acquired subsequent to such contraction. The question is, did Thorn, by his own acts, mislead and induce Hollingsworth to believe that he had relinquished the old line and claimed only under the new one that he, Thorn, had established, and that

the land between the old and new line had reverted to the
public domain, and was subject to location and survey ?

The doctrine of an estoppel, not of record or under seal,
called an estoppel *in pais*, was left for a considerable time
in a state of perplexity and uncertainty.  It is however be-
lieved that various adjudications have settled the doctrine on
principles easy to be understood.  No where has it been more
concisely and clearly laid down, than by Lord Denman in the
case of Pickard v. Sears, Eng. C. L. Rep. vol. 33, p. 117. He
says " that the rule of law is clear, that when one, by his words
" or conduct, wilfully causes another to believe the existence of
" a certain state of things, and induces him to act on that be-
" lief, so as to alter his own previous position, the former is
" concluded from averring, against the latter, a different state
" of things, as existing at the same time ; and the plaintiff in this
" case might have parted with his interest in the property by a
" verbal gift or sale, without any of those formalities that throw
" technical obstacles in the way of legal evidence." (See Wal-
ker's adm. v. Livingston et al., 3  Tex. R. 93.)   This rule is
much to be admired for its simplicity, its briefness, and it yet
being expressive of the whole doctrine on the question.   But,
without further comment on it, we will proceed to examine the
evidence, and see if Thorn has, according to it, done anything
that would conclude himself, or  the  plaintiff who claimed un-
der him, from setting up the boundaries of the grant under
which the land is claimed.

F. Jordan Ham, a witness for the defendant, in answer to
interrogatories propounded to him, in substance says, he knows
the Cordova league of land in Rusk county.  I surveyed said
land for Frost Thorn, and at his instance and request I made
said survey.  My instructions were to re-survey and re-mark
said land.  I established new corners to said land.  I made
two new corners.  The new corners cut off a part of the orig-
inal survey of said league, but I do not know how much ; but
it was cut off the north part of the said survey. I do not know

ɔe from the old to the new corners. I informed Frost
: whom I made the said re-survey, what I had done. I
,loyed by Frost Thorn to re-survey said land—the
,f land known as the Francisco Cordova league. I
at the instance and request of Frost Thorn. On his
.amination :  I neither know nor recollect of any divi-
f the Francisco Cordova league of land. I did not re-
ɑe field-notes of the Cordova league to be recorded, nor
instructed to record the same as an official act. The sur-
ʳas not made as an official act to be returned and record-
my official capacity. All persons living on the land were
ʇed. It was under a private employment by Frost Thorn,
I re-surveyed the Francisco Cordova survey.

·his is all the testimony offered to show that Thorn had, by
ɾoluntary act, precluded himself from claiming the land to
the full extent of the original boundaries of his grant. Every
word of this testimony may be true, and it would not afford the
slightest evidence to support the right of the defendant, or to
impair, in the smallest possible degree, the strength of the
plaintiff's title. There was no voluntary representation of a
state of things made by Thorn to Hollingsworth, to induce
the latter to change his position from what it was before, nor
voluntary act done by him to mislead Hollingsworth, as re-
quired by Lord Denman's rule. It is shown, that the acts done
by the Surveyor, were not done by the direction, nor with the
approbation of Thorn. He employed the Surveyor to re-sur-
vey and re-mark the old lines, and not to make a new line.
Time and the fire in the woods obscure old marks of lines, and
they would be difficult to find, unless re-surveyed and re-mark-
ed occasionally ; and it is of frequent occurrence to have them
so run around and re-marked ; but no one would believe, that
the authority so to do, constituted an authority to run a new
line and establish new corners. Suppose that a commission
had issued to the County Surveyor, from a Court in which
there was a suit pending, to survey the land claimed by the

parties litigant. He would take the surveys of the parties, or the metes and bounds, courses and distances, called for in their respective deeds, and be governed by them to ascertain and identify the locality of the land called for. No one would suppose he had any right to make a new line, or to establish a new corner. The Surveyor shows by his own testimony, that he had disregarded the instructions he received, and the object of his employment. He was employed and directed to re-survey and re-mark the lines of the Cordova grant, but instead of doing so, he has made an original survey and established new corners. It would be absurd to suppose that Thorn, in the directions he had given, ever supposed that he was giving authority to make a new location and an original survey of his Cordova league, and thereby submitted to any lopping off from his land, that the caprice of the Surveyor might think proper to make. The Surveyor had nothing to do under his authority, but to run around the league, and re-mark the lines, and it left him without any pretension to an implied authority to make a new line and new diagram of the land, by establishing new corners. The plaintiff might, with the most entire safety, have rested his case, without any evidence to rebut the evidence of Ham ; but to strip the defendant of any, the least pretence that Hollingsworth had been deceived by Ham's survey, he has proved that the next year after the survey of the latter, he employed Ross to sectionize the land in question, and instructed Ross to disregard any line that Ham had run ; and that the league was so sectionized by Ross ; and this was done before Hollingsworth's claim had any existence. These lines, so run by Ross, must have informed him, that the plaintiff's vendor, Thorn, did not acquiesce in Ham's lopping off any part of his land.

The evidence so palpably and entirely fails to support the verdict of the jury, according to the rule above cited, that the Court below ought not to have hesitated one moment to set aside the verdict and grant a new trial.

The view we have taken of this case on its merits, presented

by the evidence as contained in the statement of facts, will render it easy to be disposed of when it goes back for a new trial. We therefore do not believe that it will be necessary to go into a particular examination of the charges given and charges refused by the Court below ; but we have no doubt the Court erred in that part of its charge, that authorized the jury to presume the authority to run a new line, to be in the Surveyor, from his instructions. His instructions repudiate such authority. And it also erred in refusing to give the two charges asked by the plaintiff.

The counsel for the appellant has asked us in his brief, to render judgment in his favor for the land in question in the event of our reversing the Judgment of the Court below against him. When a case has been submitted to a jury on the issues made by the pleadings and there has been a verdict, we never have felt authorized to render the judgment that would have followed the verdict, if it had been in accordance with the evidence. If this case had been submitted to the judge, on the evidence, the parties waving a jury, on reviewing such judgment, we would render the judgment that ought to have been rendered in the Court below ; but in reversing a judgment rendered upon a verdict, we can do no more than the Court below could have done, which would have been to grant a new trial. We therefore reverse the judgment in this case on the ground that the Court below erred in overruling the plaintiffs' motion for a new trial, and remand the case for a new trial.

Reversed and remanded.