## L. H. SAUNDERS v. RICHARD HART.

### (Case No. 4480.)

1. UNIVERSITY LANDS HELD IN TRUST BY THE STATE.— The state holds the university lands as trustee, and patents issue to purchasers upon payment of the purchase money.

2. AGENT — ESTOPPEL. — Where an agent not authorized to determine boundary lines, but only to subdivide the land, fixes upon wrong boundary lines, the state is not bound thereby, either on the ground of estoppel or acquiescence.

3. ESTOPPEL NOT APPLICABLE TO STATE.— The principle of estoppel is not ordinarily applicable to the state.

APPEAL from Grayson. Tried below before the Hon. Joseph Bledsoe.

This was an agreed case under art. 1414, Revised Statutes. The facts as agreed upon were substantially as follows: University league No. 2 was located and surveyed in 1839, and the Edmund Tucker survey in 1841. The north line of the league, and the south line of the Tucker, was a common boundary line between the two. In 1854, G. W. Newcome, county surveyor, at the request of the then owner of the Tucker survey, run off the same and established the south boundary line thereof — not on the true line, but within the university league survey and south of its north boundary line. Subsequently, in 1856, Newcome, also acting as county surveyor, attempted, under act of the legislature of August 30, 1856, to subdivide the league into tracts of one hundred and sixty acres. He commenced on the south side of the league and worked north, and surveyed and recognized as its north line a line corresponding with the south line of the Tucker as established by him in 1854; and this line was generally recognized in the neighborhood as the true division line between the university league and the Tucker survey. The state afterwards sold off the league, in accordance with the subdivisions then made by Newcome. Subsequently, in 1871, it was ascertained, on the trial of another suit between the present appellant, Saunders, and one Haynie, that the north line of the league as thus recognized by the surveyor was not the true line, but was south of it. When this fact was ascertained, Bonham, the then county surveyor, was ordered by the proper state authority to subdivide that portion of the university league lying between the line originally recognized by Newcome and the true line in fact, which embraced · the land in controversy, the same having been subsequently bought from the state by appellee Richard Hart. Before this mistake was ascertained, appellant Saunders had also bought the land in contro-

versy and paid a valuable consideration therefor, believing it to be a part of the Tucker survey; his purchase having been made with reference to the lines as they were then supposed to exist. The contest here is between these two claims; Saunders, as plaintiff below, claiming under the sale to him as part of the Tucker survey, and Hart, defendant below, under the sale to him as part of the university league. There was a verdict and judgment for defendant Hart, from which this appeal was prosecuted.

*Hare & Head*, for appellant.

*Woods, Wilkins & Cunningham*, for appellee.

BONNER, ASSOCIATE JUSTICE.— The judgment in this case is sought to be reversed on two grounds. *First*, that the line recognized by the surveyor, Newcome, as the south boundary line of the Tucker and the north boundary line of university league No. 2 had been established as an agreed line; *second*, that the state, by long acquiescence, was, under the circumstances, estopped from denying that it was the true line.

1. If this be considered as a case between individual parties, the testimony fails to show that it belongs to that class, the settlement of which is encouraged by the courts, in which a disputed or uncertain boundary has been fixed by agreement of parties. There was no agreement of parties in this case, and in fact the surveyor had no authority to make such agreement. The state was in nowise a party even to the survey in which the mistake first occurred, and it did not arise out of a transaction which had for its object the ascertainment of the north boundary line of the university league.

The claim of appellant Saunders, then, does not rest upon an express agreement, but must be supported, if at all, upon some principle of estoppel.

2. The attempted subdivision by Newcome of the university league was had under act of August 30, 1856, which made it his duty to subdivide the same into tracts of one hundred and sixty acres, and to cause the lines of each tract to be plainly marked where through timber, and the corners to be established with good and substantial material. Pasch. Dig., art. 3555. He had no authority to change the true lines and corners of the original survey. The act of the surveyor, to have, of itself, bound an individual, even in the first instance, must have been authorized by him.

In Love *v.* Barber, Thorn, the owner of a grant of land, had in-

structed the surveyor to subdivide it. A subsequent locator sought to bind Thorn, by way of estoppel, by the act of the surveyor, who, in making the subdivision, contracted the original lines so as to exclude therefrom the part subsequently located upon. It was held that Thorn was not thereby estopped. Mr. Justice Lipscomb, in delivering the opinion of the court, says:

"It is shown that the acts done by the surveyor were not done by the direction nor with the approbation of Thorn. He employed the surveyor to re-survey and re-mark the old lines, and not to make a new line. Time and fire in the woods obscure old marks of lines, and they would be difficult to find unless re-surveyed and re-marked occasionally; and it is of frequent occurrence to have them so run around and re-marked; but no one would believe that the authority so to do constituted an authority to run a new line and establish new corners." 17 Tex., 319.

To make such an act binding on an individual, he must have subsequently ratified it, after full knowledge of the facts. Long acquiescence might be evidence of such ratification, and if, in the meanwhile, the line then established had been acted upon by an innocent third party under such circumstances that his rights would be materially prejudiced should the line be subsequently changed, it might bind the true owner by estoppel.

In this connection it may be noted that the state is not shown to have been advised at the time of the mistake of the surveyor in stopping short of the true north line of the university league; and that as soon as it was known, immediate steps were taken to make the proper correction. But the doctrine of estoppel does not ordinarily apply to a state as it does to individuals. It was said by Henderson, J., in Taylor v. Shuffold: "I know of no case where the sovereign power has been estopped; the cases are all the other way, and policy and justice require that they should be so. This sovereign, or sovereign power, is a trustee for the people; it acts by its agents; the people should not be bound by any statement of facts made by these agents. For their benefit the truth may always be shown, notwithstanding any former statement to the contrary." Hawk's L. & Eq., 4 N. C., 132; Fannin County v. Riddle, 51 Tex., 360; Candler v. Lunsford, 4 Dev. & Bat. (Law), N. C.; Farish v. Coon, 40 Cal., 50; Johnson v. The United States, 5 Mason's C. C. R., 425.

This principle, in its application to prevent the forfeiture or loss of real property, rests, in part at least, upon the general doctrine that the state cannot part with her title to land except by grant or other record evidence.

An apparent exception to this doctrine, that the state cannot be bound by estoppel, arises in those cases in which the act sought to be made binding was done in her sovereign capacity, by legislative enactment or resolution. Alexander *v.* The State, 56 Ga., 486; Enfield *v.* Permit, 5 N. H., 285; Commonwealth *v.* The Heirs of Andre & Billon, 3 Pick., 224.

This, however, is not so much an exception to the general doctrine of estoppel by acquiescence in an unauthorized act of a mere subordinate agent, as it is an original binding affirmative act on the part of the state itself, made in the most solemn manner in which she can give expression to the sovereign will.

That the state has control of the university lands, in trust for the original purposes of the donation, is evident by the express language of our several constitutional provisions and legislative enactments upon this subject; in fact, under the statute, the legal title thereto remains in the state until sold and the terms of sale complied with, when patent therefor is directed to issue to the purchaser. Pasch. Dig., art. 3558.

We are of the opinion, under the law as applied to the agreed facts of this case, that the title to that part of university league No. 2 in controversy was not divested either by the unauthorized act of the surveyor, Claiborne, or by subsequent acquiescence; and consequently the judgment of the court below is affirmed.

AFFIRMED.

[Opinion delivered April 15, 1882.]