## JOHN TIMON v. JOHN WHITEHEAD.

### SUPREME COURT, GALVESTON TERM, 1883.

*Trespass to Try Title—Boundary—Estoppel—Charge.*—A charge was as follows: "If the jury believe from the evidence that John Young (one of the vendors of defendant) had the lines of the De La Garza grant established in 1848, by an actual survey, and it the boundaries so made were accepted by him as the true and real boundaries of said grant, and if this survey was duly of record in the surveyor's office at the time that plaintiff located the land in controversy, and by reason of such survey or resurvey, the plaintiff was induced to locate, and did locate, the land in controversy in good faith, believing it to be vacant as a part of the public domain, then if such facts are shown, the defendant would be estopped from claiming the land so located by the plaintiff, and your verdict should be for plaintiff if the land lies out of this survey of 1848. But if the jury believe, from the evidence, that plaintiff was not in fact misled or deceived in locating the land by this survey of 1848, then defendant would not be estopped from asserting title to the land under the De La Garza grant as originally made."

*Held*, under the facts, to be correct, and that an analysis of the same shows that it fully meets the requisites of the rule of estoppel.

Appeal from San Patricio county. Opinion delivered by Willie, Chief Justice.

The appellee claimed the land in controversy under a patent to Hiram Riggs, dated July 10. 1879, and appellant under two Mexican grants, one to the town of San Patricio of four leagues as an *ejidos*, and the other of a league to Juan De La Garza. The validity of these several original titles was not in dispute, and a regular chain of title to the Riggs survey was shown in appellee and to the Juan De La

Garza grant in appellant. The conveyence from the corporation of San Patricio to Timon of a portion of its *ejidos* was made upon condition that a suit then pending in which the corporation was plaintiff and Coleman, Mathis & Fulton, together with John Whitehead, the appellee, were defendants to which the title to the land conveyed was involved, should be determined in its favor. It was proven that in said suit judgment final had been rendered in the district court, in favor of defendants, and that up to that time no steps had been taken to remove it for revision to the supreme court. It is assigned for error that the court should not have charged the jury to disregard said deed to Timon. This assignment is not well taken, for he purchased pending the suit brought by the city for the land, with full knowledge of it, and in effect agreed that he should receive no title by the conveyence, unless that suit should be decided in favor of his grantor, which it was not. It is of no importance that a writ of error from the judgment of the district court could be sued out, the two years of limitation not having expired. No steps had then been taken to obtain such writ, and the judgment was at the time of the trial for all purposes of the cause then at bar a final judgment.

As Whitehead, the appellee, was a party to that suit and judgment, the plea of outstanding title in the corporation could not avail. The judgment was a bar to any suit between him and one claiming under the corporation involving the same subject matter. The question of title to the land on which Riggs' certificate was located as between him and the corporation was *res adjudicata*, and Timon as the assignee of San Patricio, could not litigate it again in this action. The decision of this appeal must turn upon the charge of the court on the subject of estoppel, regardless of all proof as to the true boundaries of the De La Graza grant, and of whether or not, they conflicted with the Riggs survey, for the verdict of the jury might have been, and doubtless was, influenced by this charge. This charge was as follows :

"If the jury believe from the evidence that John Young (one of the vendors of defendant) had the lines of the De La Garza grant established in 1848 by an actual survey, and if the boundaries so made were accepted by him as the real boundaries of said grant, and if this survey was duly of record in the surveyor's office at the time that plaintiff lo-

cated the land in controversy, and by reason of such survey or re-survey, the plaintiff was induced to locate, and did locate, the land in controversy in good faith, believing it to be vacant as a part of the public domain, then if such facts are shown, the defendant would be estopped from claiming the land so located by the plaintiff, and your verdict should be for plaintiff if the land lies out of this survey of 1848. But if the jury believe from the evidence, that plaintiff was not in fact misled or deceived in locating the land by this survey of 1848, then defendant would not be estopped fr om asserting title to the land under the De La Garza grant as originally made. "The rule of estoppel by conduct is laid down as follows : 'When one by his conduct willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. (Big. on Estoppel, p. 479.) This is the exact language of Lord Denman in the case of Pickard v. Sears. 33 Eug. C. Rep. p. 117, and has been followed universally by the highest courts of America, including our own supreme court, in the case of Love v. Barber, 17 Tex. 312, and others since decided, as expressive of the whole doctrine on the question. An analysis of the charge will show that it fully meets the requisites of this rule. It requires, first, that Young, under whom Timon claimed, should have had the lines of the De La Garza grant established in 1848. This action on Young's part would not, of itself, have prejudiced his right to claim any other boundaries, if nothing was done to show that he accepted them as the correct boundaries of his land. Love v. Barber, *Supra.* But the charge goes further and requires that Young should have accepted these lines as the true boundaries of his grant. Still some of the elements of an equitable estoppel are lacking. The extent of Young's claim as defined by these boundaries must have been brought to the knowledge of the party pleading the estoppel. Hence the charge requires further that the jury must believe that survey was duly recorded in the surveyor's office at the time appellee located the land in controversy This brings the character and extent of Young's claim to the knowledge of the world as much so as if directly stated by Young, and is calculated to

influence the conduct of parties seeking vacant land to locate upon in San Patricio county. The charge as a last element of the estoppel, requires that the jury should find that appellee was induced by this conduct of Young to locate, and did locate, and in good faith, believing it to be vacant. This is the change in position induced by the conduct of another so necessary to constitute an estoppel. Here, then, we have all the necessary constituents of an equitable estoppel. The conduct of Young, in having his land re-surveyed and the new field notes placed upon the record was sufficient to make the public believe the existence of the fact that the land included in those field notes was all that he claimed as embraced in the Garza grant. Informed of this by an examination of the records, Whitehead alters his previous position so far as to become a locator upon land not included in Young's recorded boundaries. Shall one, claiming the privity of the estate to Young, be allowed to aver against Whitehead that a state of things from what Young had placed upon the records existed at the time, viz., that other and different lines enclosed the land? This case differs in important particulars from that of Love v. Barber. In that case the surveyor testified that he did not return the field notes to be recorded, nor was he instructed to record the same as an official act. That the survey was not made as an official act, to be returned and recorded in his official capacity. It was under a private employment that he resurveyed the land. And in that case the surveyor was employed to resurvey and remark the old lines, and did not perform his duty, but changed them and made new corners so. as to contract the owners' boundaries, and the work was repudiated by his employer. No one seeking vacant land for location would be guided by surveyors' marks alone, but would look to the records of his office for the true facts. A record of a survey when properly made in the surveyor's office is notice to the world of the lines and boundaries claimed by the owner of the land. From these surveys the county map is made. All persons having their surveys made part of such records must know that parties in search of vacant lands for location will be guided by them. In other words will be induced to change their position and will incur loss and unnecessary expense if such records do not speak the truth.

The case of Saunders v. Hart, decided at last Austin

term; differs in almost every essential point from the present one. It was held there that the act of the surveyor, in running the lines, should have been authorized by the individual against whom the estoppel was pleaded, in order to bind him, or he must subsequently have ratified it after full knowledge of the facts. "Long acquiescence," says the court, "might be evidence of such ratification, and if, in the meanwhile, the line thus established had been acted upon by an innocent third party, under such circumstances that his rights would be materially prejudiced should the line be subsequently changed, it might bind the true owner by estoppel." The charge of the court, in the present case, brings it exactly within this rule. In the case of Saunders v. Hart, the survey made at the request of Tucker gave him more land than did his original survey. The estoppel was claimed, not against him, but against the state of Texas, upon whose land this new survey encroached. The only ground of estoppel was acquiescence on the part of the state in the record lines, whilst Tucker might have estopped himself from claiming beyond such lines, he could not, by his act, estop other parties claiming in opposition to them. Moreover, it was proven that the state repudiated these new bounderies so soon as made known to the proper authorities; finally the decision was rested on the ground that the doctrine of estoppel did not apply, ordinarily, to a state as it does to individuals.

Further comment on this case is unnecessary, as it is so clearly different in all its aspects from the one now under discussion. Upon the whole, we conclude that there is no material error in the charge. Did the facts of the case warrant it?

On the trial of the cause, James Goffrey, the then county surveyor, produced the records of the surveys of San Patricio county, and amongst them was a resurvey for John Young, of the De La Garza tract, dated January 8, 1848. It begins, "survey for John Young, assignee of Juan De La Garza, of 26 labors of land." These field notes were in the resurvey book. This survey, purported to be made by one Swively, the surveyor of San Patricio county at the time, and a map of the county made by him and kept in the office, had the lines of the survey delineated in it according to said field notes. Goffrey's map of the county was platted in the

same way. This was, perhaps, the best evidence on the subject which could be obtained after a lapse of more than thirty years. The surveyor was presumed to have done his duty and to have acted in accordance with the statements of his survey; if so, the records themselves showed that the work was done at the instance of Young for the purpose of being recorded, and thereby giving notice of the extent of his claim. The survey and the map had remained in the office for thirty years at the time the Riggs certificate was located on it, without objection on the part of the claimant of the Garza tract. This showed an acquiescence, on the part of Young and those claiming under him, in its correctness. An act of congress was passed in 1845 requiring the owners of lands in San Patricio county, where the lands had not been correctly and permanently marked and designated, to have them resurveyed within two years. These resurveys were to be regarded as the only true boundaries of the land. Although the two years had expired when this survey occurred, it was doubtless the object of Young, in making it, to accomplish the purpose mentioned in the act, which he could do by agreement, perhaps, as well as under compulsion. His survey was recorded in the same book with those made under the law, and we think should be binding upon those claiming in privity with him, after so great a lapse of time.

Taking the facts altogether, we think there was evidence sufficient to warrant the charge of the court on the subject of estoppel, and that there is no error in the judgment, and it should be affirmed.