# Supreme Court of Texas

---

No. 23-0842

---

PDT Holdings, Inc., and Phillip Thompson Homes, Inc. d/b/a
Phillip Thompson Custom Homes,

*Petitioners*,

v.

City of Dallas and the Board of Adjustment of the City of Dallas,

*Respondents*

---

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

---

**Argued January 15, 2025**

JUSTICE BUSBY delivered the opinion of the Court.

Mistaken actions by city officials generally will not equitably estop the city from performing its governmental functions. But we have long recognized that estoppel may be necessary to prevent manifest injustice in exceptional cases where a citizen relies on affirmatively misleading government statements and suffers substantial loss as a result. We agree with the trial court that this is such an exceptional case.

Following a bench trial, the court rendered judgment estopping the City of Dallas from enforcing its residential-proximity-slope ordinance against a builder's completed over-height residential duplex. The court of appeals reversed, concluding this was not an exceptional case because the City simply erred in issuing a building permit for a noncompliant structure.

We agree that a mere mistake in issuing a permit is not sufficient for estoppel, but that is not what happened here. Instead, city officials affirmatively told the builder that 36 feet was the applicable height limit, issued an amended permit for that height after inspecting the construction, and stated that the duplex was "OK TO FINISH" even after they identified the ordinance violation. Accordingly, we hold that legally sufficient evidence supports the disputed elements of estoppel, and the trial court did not abuse its discretion in concluding estoppel is necessary to prevent manifest injustice.

## BACKGROUND

PDT Holdings, Inc. and Phillip Thompson Homes, Inc. (collectively, "the Builder") develop property and construct residential homes and other structures across the Dallas–Fort Worth metroplex. One of the Builder's projects was to build a duplex townhome at 5230 Alcott Street in Dallas—an irregularly-shaped, 6000-square-foot residential lot with an existing single-family structure destined for demolition. To the north of the lot is a retail-use development; to its east, south, and west are other residential properties with existing structures.

2

Before preparing its construction plan, the Builder and its various agents met with city officials several times to verify any applicable restrictions, and the Builder's agent also conducted his own internet searches for restrictions. In response, city officials identified only a 36-foot maximum-building-height limit, and the Builder's internet searches revealed no other height-related restrictions.

With this information in mind, the Builder prepared and submitted a detailed construction plan to the City's planning and zoning department, seeking a permit to construct a three-story duplex with an overall height of around 36 feet. The City approved the Builder's plan and issued a permit shortly thereafter, authorizing the construction of the duplex exactly as shown on the plan. Construction began in October 2017, and the Builder signed a contract to sell a unit in the duplex one month later.

In January 2018, with construction in progress, the City sent an inspector to assess the structure's compliance with the City's Development Code. The inspector measured the structure's height and determined that the top of the parapet wall[1] on the roof slightly exceeded the 36-foot maximum-height limit. The City issued a stop-work order,

---

[1] Visually, a parapet wall is a vertical barrier atop and along the edge of a structure's roof. "The earliest known representation of a parapet wall comes from Mesopotamia," where its main use was as cover from bows, arrows, and other missiles during battle. M. S. Mate, *Parapet Crestings in Architectural Ornamentation*, 19 BULL. DECCAN COLL. POST-GRADUATE & RSCH. INST. 280, 280-81 (1959). Today, a parapet wall is used, among other things, to conceal equipment on a structure's rooftop, prevent falls, or reduce wind loads. Rose Peterson, *Parapet Roof Design (Explained)*, BETTER THAT HOME (Apr. 20, 2025), https://betterthathome.com/parapet-roof-design/.

citing the parapet wall's height and halting construction until the Builder amended its construction plan.

Although the Builder disagreed with the City's citation, it nevertheless amended its existing plan, incurring reconstruction and compliance costs of about $7,500. The amended plan changed only the parapet height; everything else, including the structure's overall height of 36 feet, remained the same. The City promptly approved the amended plan, issued another permit, and lifted its stop-work order. In turn, the Builder quickly resumed construction.

Six months into construction and with the duplex 90 percent complete, the City issued another stop-work order in April 2018. As before, the City's citation concerned the structure's overall 36-foot height. But this time, the structure's noncompliance was measured against a height restriction that city officials did not originally mention and the Builder's searches did not reveal: the residential-proximity-slope (RPS) ordinance. *See* DALLAS, TEX., CODE § 51A-4.412. This ordinance restricts a structure's maximum height based on, among other things, the property's zoning category and its proximity to residential properties.[2] The City asserted that under the RPS ordinance, a structure on this property could not exceed a height of

---

[2] A "residential proximity slope," as contemplated in the City's Development Code, "is a plane projected upward and outward" at a specified angle depending on the applicable zoning category. *See* DALLAS, TEX., CODE § 51A-4.412(b). The plane begins at the property line of a nearby residential lot and prevents any portion of a planned structure over 26 feet in height from being located above the plane.

4

26 feet[3]—10 feet lower than the height shown on the Builder's approved plans and issued permits.

After receiving the stop-work order, the Builder, confused about the RPS ordinance's features, contacted city officials to discuss how the structure was noncompliant. Without offering an explanation, city officials advised the Builder to apply for a variance from the Board of Adjustment (BOA).[4] The Builder filed an application for a ten-foot height variance, arguing that extreme waste would otherwise result from the destruction of a near-complete residential structure.

The BOA set a hearing on the Builder's variance request for May 2018. Before the scheduled hearing date, the City voluntarily lifted its stop-work order, informing the Builder that it was "OK TO FINISH" constructing the duplex. Yet the hearing still occurred as scheduled. The Builder's representative testified, as did several neighboring homeowners who protested the structure's height and blamed the City for permitting a noncompliant structure. The City recommended that

---

[3] Because the area is zoned as MF-2(A), the RPS plane is projected upward at a 45° angle from the property line and terminates at a distance of 50 feet. *See* DALLAS, TEX., CODE § 51A-4.412(c). Given the location of the property line and the position of the Builder's structure on the lot, the City took the position that the plane intersected the structure, thereby limiting its height to 26 feet.

[4] TEX. LOC. GOV'T CODE § 211.009(a) ("The board of adjustment may . . . authorize in specific cases a variance from the terms of a zoning ordinance if the variance is not contrary to the public interest and, due to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship, and so that the spirit of the ordinance is observed and substantial justice is done . . . .").

5

the Builder's variance request be denied, and the BOA denied it without prejudice.

One week later, the Builder filed a second variance request that received the City's support. The BOA denied that request too, this time with prejudice. Without the variance, the Builder's duplex—now 95 percent complete at a cost of over $1 million—was unusable: a certificate of occupancy would not issue until a final inspection of the structure occurred, which could not be passed absent compliance with the RPS ordinance.

The Builder sued,[5] seeking to estop the City from enforcing the RPS ordinance under various equitable theories including estoppel, laches, and waiver.[6] Following a bench trial, the trial court signed the Builder's proposed judgment, which provided, among other things, that the City was estopped "from enforcing . . . [the RPS ordinance] or any ordinance related to the height of the structure . . . in existence at the time the plans were approved and permits were issued in 2017 and which the City did not raise prior to January 2018." Without requesting findings of fact or conclusions of law, the City appealed.

The court of appeals reversed. 703 S.W.3d 409 (Tex. App.—Dallas 2023). Applying our decision in *City of White Settlement v. Super Wash,*

---

[5] TEX. LOC. GOV'T CODE § 211.011(a)(1) (allowing "a person aggrieved by a decision of the board" to "present to a district court . . . a verified petition stating that the decision of the [BOA] is illegal in whole or in part").

[6] While the case was pending, the trial court granted the parties' joint motion to abate and remand to the BOA. A third hearing was held in May 2020 on the Builder's same variance request, again with the City's support. But the BOA again denied the request, leading the Builder to file its live (third amended) petition.

6

*Inc.*, 198 S.W.3d 770 (Tex. 2006), the court held that justice did not require equitable estoppel against the City. 703 S.W.3d at 419. Even after "imply[ing] all findings necessary to support the judgment" in the Builder's favor, *id.* at 413 n.3, the court of appeals concluded nothing in the record showed an affirmative misrepresentation by the City or a benefit to the City from the Builder's reliance on the City's mistakes, *see id.* at 417, 418. It also found the Builder's argument that it reasonably relied on the City's actions "unpersuasive" because the RPS ordinance was a matter of public record. *Id.* Thus, the court concluded this case was not among those "exceptional cases where the circumstances clearly demand [estoppel's] application to prevent manifest injustice." *Id.* at 419 (quoting *Super Wash*, 198 S.W.3d at 774). This petition followed.

ANALYSIS

The Builder's petition presents two issues: one concerning the standard of review and the other regarding whether the law and the record support the trial court's judgment estopping the City from enforcing its RPS ordinance against the Builder. We conclude that under the correct standards of review, the trial court's judgment must be reinstated and the court of appeals' judgment reversed.

I.    **Standard of review and applicable law**

"The purpose of estoppel[] is to prevent inconsistency and fraud resulting in injustice." *Kuehne v. Denson*, 219 S.W.2d 1006, 1009 (Tex.

7

1949) (quoting 31 C.J.S., *Estoppel*, § 1).[7]  Equitable estoppel requires proof of five elements:

> (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations.

*Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 486 (Tex. 2017) (internal quotation marks omitted); *see also Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex. 1952).  In addition, when equitable estoppel is invoked against a municipality, the case must be an exceptional one in which "justice requires" estoppel and its application would not "interfere[] with the exercise of . . . governmental functions."  *Super Wash*, 198 S.W.3d at 774 (quoting *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 836 (Tex. 1970)).

Whether equitable estoppel applies is a question for a court to decide.  *Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex. 1999).  Different parts of that question are governed by different standards of review.

If there is a dispute of material fact regarding one or more of the five elements of equitable estoppel, that dispute must be resolved by the finder of fact.  *See Huynh v. Blanchard*, 694 S.W.3d 648, 673, 675 (Tex.

---

[7] American courts sitting in both law and equity historically rooted estoppel in the principle "that no man may take advantage of his own wrong." *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 & n.6 (1959) (collecting cases).  Similarly, Texas courts have long recognized that estoppel "is for the protection of those who have been misled by that which upon its face was fair, and whose character as represented parties to the deception will not, in the interest of justice, be heard to deny." *Davis v. Allison*, 211 S.W. 980, 984 (Tex. 1919).

2024); *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979). In this appeal from a judgment following a bench trial where no factual findings were requested, all necessary findings supported by the evidence are implied, and the legal and factual sufficiency standards of review govern appellate challenges to those findings. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

In contrast, "[t]he [trial] court, not the [factfinder], determines whether" the case is an exceptional one requiring estoppel against a municipality. *Super Wash*, 198 S.W.3d at 774. Because this part of the question concerns the expediency, necessity, and propriety of equitable relief, *id.*, an appellate court reviews the trial court's decision for abuse of discretion. *See Huynh*, 694 S.W.3d at 673-74. A court abuses its discretion when it errs in determining what the law is or applying the law to the facts, or when it could reasonably have reached only one decision on the record yet fails to do so. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

In Part II of this opinion, we address whether legally sufficient evidence supports the trial court's implied findings on the challenged elements of equitable estoppel. We then consider in Part III whether the trial court abused its discretion in concluding that this is an exceptional case requiring estoppel against the City.

## II. There is legally sufficient evidence of the challenged elements of equitable estoppel.

The City contends that there is legally insufficient evidence of the following elements of equitable estoppel: (1) that the City falsely

9

represented material facts; (2) that the Builder lacked knowledge or means of obtaining knowledge of those facts falsely represented; and (3) that the Builder detrimentally relied on the false representation. We address each element in turn. The evidence is legally sufficient if there is more than a scintilla of evidence from which a reasonable trier of fact could find the element to be true. *See 4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 908-09 (Tex. 2016).

### A.     False representation

First, the City argues that its approval of construction plans exceeding the maximum height permitted under the RPS ordinance was not "a false representation or concealment of material facts"; rather, it was an unintentional oversight. But the intent of a misrepresentation is not material to this element: what matters in determining whether the City made a false representation is whether its representation was in fact untrue.[8] There is more than a scintilla of evidence that the City made false representations to the Builder and its agents.

When the Builder asked city officials about applicable restrictions, they identified only a 36-foot maximum-height limit, not the 26-foot limit imposed under the RPS ordinance. After the Builder amended its construction plan to address the City's first height-related stop-work order, the City conducted its own inspection and issued a

---

[8] *City of Houston v. McDonald*, 946 S.W.2d 419, 421-22 (Tex. App.—Houston [14th Dist.] 1997, writ denied); *False Representation*, BLACK'S LAW DICTIONARY (12th ed. 2024) (directing reader to definition of misrepresentation, which is "a materially incorrect, unfair, or false statement; an assertion that does not accord with the facts"; and it "need not be fraudulent to amount to a misrepresentation").

second permit, again approving the construction of a 36-foot-high structure. And although the City did eventually issue a stop-work order based on the RPS ordinance, it later lifted that order, stating "OK TO FINISH."

As the Builder later found out, these representations were false. The applicable height restriction under city ordinances was not in fact 36 feet; it was 26 feet. The Builder was not entitled to an amended permit for the 36-foot-high structure the City inspected. And that structure was not OK to finish under the RPS ordinance.

## B. Lack of means to obtain knowledge

Second, the City argues that the RPS ordinance was a matter of public record and therefore easily discoverable through due diligence. "A party claiming an estoppel must have used due diligence to ascertain the truth of the matters upon which he relies in acting to his detriment." *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 838 (Tex. 1968). If the facts "were known to a person or were open for his convenient ascertainment," that person cannot "rely[] on [the] representation pertaining thereto and . . . cannot effectively say that he was misled or deceived by [the] representation[]." *Id.*

Here, there is more than a scintilla of evidence that the Builder used due diligence yet did not discover the RPS ordinance. The Builder's representative testified that his internet searches did not reveal the ordinance.

Moreover, as we explain in more detail later, our cases recognize that a party's failure to discover a government restriction will not prevent estoppel when that failure is attributable to affirmative

11

government misdirection. *See Roberts v. Haltom City*, 543 S.W.2d 75, 80 (Tex. 1976) (holding deemed notice of city charter provision did not prevent estoppel where plaintiff's "ignorance of the charter provision was primarily attributable to the actions of the city officials"); *see also Mosley v. Tex. Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 263, 267-68 (Tex. 2019) (rejecting argument that plaintiff had obligation to discover and comply with government requirement that was contrary to instructions government provided). Here, the record includes evidence that the City affirmatively told the Builder that the applicable building-height limit was 36 feet—not the 26 feet imposed by the RPS ordinance—and that construction was OK to finish.

### C. Detrimental reliance

Third, the City argues that the Builder's reliance on its issued permits was not reasonable because those permits contained language cautioning that they did not authorize a violation of city ordinances. But as explained above, the City did more than just issue the permits: the evidence shows that the City falsely represented the applicable building height to the Builder, and that the Builder was unaware the City's guidance was (or even could be) erroneous. *See Mosley*, 593 S.W.3d at 263-64, 268 (holding government misdirection violates due process where plaintiff is "not aware of any problem at all with simply following the instructions given"). In addition, there is evidence that the Builder spent over $1 million to build the duplex in reliance not only on the original and amended permits but also on the City's inspection and decisions to lift the stop-work orders.

For these reasons, we conclude there is sufficient evidence of the elements of equitable estoppel challenged by the City.

III. **This is an exceptional case requiring estoppel against the City.**

In addition to proving each element of equitable estoppel, a party seeking estoppel against the government must also show that its case is among the "exceptional cases where the circumstances clearly demand [estoppel's] application to prevent manifest injustice." *Super Wash*, 198 S.W.3d at 773 (quoting *Prasifka*, 450 S.W.2d at 836). *Super Wash* reiterated our long-held general rule "that a city cannot be estopped from exercising its governmental functions." *Id.*[9] In *City of San Angelo v. Deutsch*, for example, we refused to estop the city from enforcing its tax lien, reasoning that "a municipality is not estopped by the unauthorized acts of its officer or agent, or by his wrongful act." 91 S.W.2d 308, 310 (Tex. 1936).[10] Applying the general rule, we have held

---

[9] This general rule barring estoppel against cities, as set forth in *Super Wash*, is derived from our general rule barring estoppel against the State. *See Marsalis v. Garrison*, 27 S.W. 929, 932 (Tex. App.—Fort Worth 1894, no writ). Although cities "represent no sovereignty distinct from the [S]tate," *Payne v. Massey*, 196 S.W.2d 493, 495 (Tex. 1946), no party argues that this distinction counsels overruling *Super Wash* and its progeny. The general bar on estoppel against the State and the limited exception to that general rule in the state-specific estoppel context have long been recognized under Texas law. *See Saunders v. Hart*, 57 Tex. 8, 10 (1882).

[10] *See also City of San Antonio v. Pigeonhole Parking of Tex., Inc.*, 311 S.W.2d 218, 223 (Tex. 1958) (no estoppel against city exercising governmental authority); *Tex. Co. v. State*, 281 S.W.2d 83, 88 (Tex. 1955) (no estoppel against state recovering lands and minerals); *Rolison v. Puckett*, 198 S.W.2d 74, 77 (Tex. 1946) (no estoppel against city asserting tax foreclosure); *Republic Ins. Co. v. Highland Park Indep. Sch. Dist.*, 171 S.W.2d 342, 346 (Tex. [Comm'n Op.] 1943) (no estoppel against city collecting tax assessment).

13

that a landowner could not estop a city from enforcing its zoning ordinance based on a later city resolution changing the property's zoning classification that proved to be ineffective. *See Prasifka*, 450 S.W.2d at 834-36. We have also held that a purchaser of property could not estop the government from enforcing a judgment favorable to its title based on a later judgment favorable to the purchaser's title that was eventually declared void. *See Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 170 (Tex. 2013).

Our cases have also recognized a limited exception to this general rule: "a municipality may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions." *Super Wash*, 198 S.W.3d at 774 (quoting *Prasifka*, 450 S.W.2d at 836). Although "this exception is available only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice," *id.* (internal quotation marks omitted), we have applied the exception in cases where city officials led the plaintiff to believe that certain legal requirements had been met or waived, *see City of San Antonio v. Schautteet*, 706 S.W.2d 103, 105 (Tex. 1986); *Roberts*, 543 S.W.2d at 78-79.

Whether the exception applies is a two-part inquiry: (1) whether "justice requires [the] application" of estoppel in these circumstances; and (2) whether estoppel will "interfere" with the "future performance of [a] governmental function." *Super Wash*, 198 S.W.3d at 774, 776. We consider each part in turn to determine whether the trial court abused its discretion in concluding that the exception applies here.

14

## A.     Justice requires estoppel against the City.

We observed in *Super Wash* that our cases discussing when "justice requires estoppel" have involved "evidence that [(1)] city officials may have affirmatively misled the part[y] seeking to estop the city," and (2) the party "would [be] completely denied relief" absent estoppel because no "other remedies [are] available . . . that it has yet to pursue." *Id.* at 775.[11]  We also noted the relevance of evidence regarding whether (3) "the misleading statements resulted in . . . permanent loss" or estoppel is "necessary for [the party's] continued operation," (4) the ordinance "was a matter of public record and discoverable by [the party] before it purchased the [property]," and (5) "the City acted quickly— within days of learning of its error—to notify [the party] of the [o]rdinance." *Id.*

These considerations support the trial court's application of equitable estoppel here.  First, this is not a case involving a city official's mere mistaken issuance of a building permit or mistaken acquiescence in an ordinance violation.  Instead, there is evidence that city officials affirmatively misled the Builder regarding the overall height limit of the structure and whether it could be completed as permitted.  Three months after granting a permit for a 36-foot-high structure, the City issued a stop-work order, citing the violation of a height-related

---

[11] *See also Roberts*, 543 S.W.2d at 78-80; *Krause v. City of El Paso*, 106 S.W. 121, 123 (Tex. 1907) ("Why should a municipal corporation, which has led a citizen into error and caused him to expend large sums of money in the erection of permanent improvements . . . , be permitted to destroy the improvements . . . simply to assert a legal right?  A sense of justice common to all civilized people revolts at such a rule of legalized wrong.").

15

restriction concerning the structure's parapet wall. It later conducted a height inspection and approved the Builder's amended plan, which included the same overall height of 36 feet. Then, six months into construction and with the project about 90 percent complete, the City finally issued a stop-work order identifying the overall height violation of the RPS ordinance. Just a few days later, it rescinded that order as well—stating "OK TO FINISH"—and allowed the Builder to fully complete construction. Considered together, this evidence shows that the City's actions affirmatively misled the Builder into constructing a noncompliant structure.

Second, there is evidence that the Builder would be completely denied relief absent estoppel. The Builder unsuccessfully sought a variance three times; no other remedies were available that it had yet to pursue. The City argues that the Builder could also have challenged the variance denials in court. But variances involve significant discretion,[12] and there is no indication that the variance denials were faulty for any reason other than the same estoppel-based considerations at issue here.

Third, there is evidence that the City's affirmative misrepresentation will result in permanent loss. The Builder's representative testified that the most feasible way to comply with the RPS ordinance at this point would be to raze the structure—which cost over $1 million to build—and construct a new, shorter one.

---

[12] *See* 2 AM. LAW ZONING § 13:26 (5th ed.) ("[T]he board retains significant discretion to evaluate variance applications on a case to case basis . . . .").

Fourth, although the RPS ordinance was a matter of public record, our cases have recognized that affirmative misdirection can overcome constructive notice. We have applied estoppel against a city "demand[ing] strict compliance with [its] charter provisions," for example, where city officials "so conducted themselves as to lull the claimant into a sense of security, causing him to think they were waiving said charter provision." *Cawthorn v. City of Houston*, 231 S.W. 701, 706 (Tex. Comm'n App. 1921, holding approved, judgm't adopted).[13] And more recently in *Mosley*, we explained that although "parties have an obligation to discover and satisfy" applicable government regulations, that obligation "is in tension with" the government's obligation not to "publish[] an erroneous regulation" misdirecting a party "and then blam[e] the [party for] fail[ing] to discover the regulation was wrong all along." 593 S.W.3d at 263-64. Where the party has "no independent knowledge" of a government requirement and is "not aware of any problem at all with simply following the [misleading] instructions given her by the [government]," the government may not hold her to that requirement. *Id.* at 268. As explained above, that is what happened here.[14]

---

[13] *See also Roberts*, 543 S.W.2d at 78 ("While it is settled law that ignorance of a charter provision does not excuse compliance therewith, this court in exercising its equitable powers under the doctrine of estoppel cannot ignore the practical effect of the conduct of the city officials" that "led [the plaintiff] to believe that the [provision] was waived.").

[14] The situation would be materially different if there were evidence that a city purposefully or collusively violated the law in order to trigger equitable estoppel. Our precedent does not support the notion that a city can invite estoppel by granting authorization for something it wants but knows to be improper.

Fifth, the City did not act quickly in notifying the Builder of the RPS ordinance. The first time it mentioned the ordinance to the Builder was over six months after issuing the original permit—when the structure was 90 percent complete. And even after notifying the Builder of its noncompliance, the City lifted its stop-work order, allowing construction to continue to completion.

For its part, the City argues that it cannot be estopped absent "[e]vidence that city officials acted deliberately to induce a party to act in a way that benefitted the city but prejudiced the party." *Super Wash*, 198 S.W.3d at 775. According to the City, it received no benefit from approving a structure that did not comply with the RPS ordinance, so the exception to the general rule barring estoppel should not apply.

We disagree. *Super Wash* said that evidence of a city receiving a benefit "*weighs in favor* of applying the exception," not that such evidence is required. *Id.* (emphasis added). We similarly noted in a later case that "we have applied estoppel to prevent manifest injustice" in cases of government benefit—concluding, there, that "no evidence suggests . . . that [the city] benefitted." *A.P.I. Pipe*, 397 S.W.3d at 170. But our decision did not suggest that evidence of the government receiving a benefit was required.

Instead, we went on to explain why that case was different from *Roberts* and *Schautteet*. *See A.P.I. Pipe*, 397 S.W.3d at 170 & n.36. As already explained, those cases applied estoppel against the government in circumstances similar to those here. On this record, the trial court could reasonably have reached only one decision: justice requires

18

estoppel against the City. Accordingly, we hold the trial court did not abuse its discretion.

## B. Estoppel would not interfere with future performance of governmental functions.

Turning to the second part of the inquiry, we took the opportunity in *Super Wash* "to clarify what it means to 'interfere' with a governmental function." 198 S.W.3d at 776. "[T]he relevant inquiry is whether estopping the city in a single instance will bar the future performance of that governmental function or impede the city's ability to perform its other governmental functions" or "affect public safety." *Id.* at 776, 777.

Everyone agrees that the functions of municipal government implicated here are zoning and planning.[15] The City contends that applying estoppel here would leave it unable to answer the concerns of neighbors regarding the Builder's over-height structure, impairing its ability to perform these governmental functions.[16] But "precluding a city from performing a specific governmental function in a single instance is not *per se* interference with its governmental functions." *Id.*

---

[15] *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(29) (including "zoning, planning, and plat approval" among "governmental functions" for which a municipality can be held liable); *Super Wash*, 198 S.W.3d at 776-77 (consulting the Tort Claims Act's "nonexclusive list of specific, municipal functions" to assess whether certain functions are governmental).

[16] Nothing in this opinion should be construed to affect any remedies that the neighbors may have against either party. Whether a court, in deciding whether justice requires estoppel, should take into consideration the severity of any injustice neighbors will likely face from its application is a question we leave open for a future case where it is raised by the evidence.

19

at 776. Nothing in the record indicates that allowing this single over-height structure to remain would bar future enforcement of the RPS ordinance in other instances or hinder the City's ability to ensure public safety. The trial court thus did not abuse its discretion in concluding that estoppel would not interfere with a governmental function.

## CONCLUSION

Having concluded that the trial court's implied factual findings were supported by legally sufficient evidence and that the trial court did not abuse its discretion by concluding that this is an exceptional case requiring estoppel against the City, we hold that the court of appeals erred in reversing the trial court's judgment. We therefore reverse the court of appeals' judgment and reinstate the trial court's judgment that the City is estopped from enforcing the RPS ordinance against the Builder. *See* TEX. R. APP. P. 60.2(c).

J. Brett Busby
Justice

**OPINION DELIVERED:** May 2, 2025

20