

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner of the General Land Office
Austin, Texas

Dear Sir:

Opinion No. O-5062
Re: Whether Taxes assessed against
the interest of a former pur-
chaser of State School Lands
constitute a lien against such
property in the hands of a new
purchaser under a subsequent
sale, and related question.

We have your letter of recent date wherein you
requested the opinion of this Department on the above stated
question. In order that all the facts may be reflected by
this opinion we quote your letter in full as follows:

"This department is frequently asked if
school land which has been forfeited and resold
by the State is liable for taxes assessed against
it before forfeiture. Our position has been that
forfeited school land which has been resold is
acquired free of all back taxes, State and local.

"The specific case before us now is as follows:

"On March 15, 1900, the State sold Section
14, Certificate 1/560, T. & P. Ry. Co., 640 acres
in Bowie County. This sale was last forfeited
January 15, 1941 and on April 2, 1942 was sold
to Mrs. Willie R. Timmins of Dallas, Texas, after
being advertised as required by law. This sale
is in good standing.

"Under the authority conferred by an act
of the regular session of the 32nd Legislature,
1911, Chapter 118 as amended by Chapter 33 Acts
of the regular session of the 34th_Legislature
1915, the Commissioner's Court of Bowie County
created what is known as Bowie County Levee Im-
provement District No. 2 which embraced the above
sections of land. Bonds were voted and from time
to time taxes have been levied against the land
in the district including the land in question.
Certain improvements were made and if there were
benefits to the land in the district, the above
section shared in such benefits.

"The former purchaser of this land from the
State failed to pay the taxes levied against the
land for the retirement of these bonds. These
taxes were levied before the last forfeiture and
before the land was sold by the State to Mrs.
Timmins.

"In view of the above facts I shall appre-
ciate your answer to the following questions:

"1. Since the sale of this section of land
April 8, 1942, is the land liable for the taxes
levied in the above district before the date of
the above sale? In other words, do these taxes
follow the land in the hands of the new purchaser?

"2. Is public school land which has been
forfeited and then resold by the State, liable
for, or subject to taxes, State or local, which
were levied before January 1st following the
date of the sale?"

All privately owned real property, which is not
specifically exempted from taxation by law, is taxable in
this State. The provisions of Article 7171, R. C. S. 1925,
require that all real property subject to taxation shall be
assessed to the owner thereof, and Article 7172, R. C. S.
1925, provides that taxes due upon "real property" shall be
a lien thereon until paid.

It is a settled rule in Texas that public land dedicated to the use and benefit of the permanent free school fund is not taxable by any taxing authority so long as title thereto remains in the State. This exemption is based upon provisions of the constitution and statutes of this State.

The Texas Constitution, Section 2 of Article VIII, provides that the Legislature may exempt from taxation "public property used for public purposes". This provision does not of itself grant any exemptions; it merely authorizes the Legislature to do so. St. Edwards College v. Morris, 82 Tex. 1, 17 S. W. 512; Santa Rosa Infirmary v. City of San Antonio (Com. App.), 259 S. W. 926, reversing 249 S. W. 948.

However, pursuant to this Constitutional provision, the Legislature enacted Article 7150, R. C. S. 1925, which reads in part as follows:

"The following property shall be exempt from taxation, to wit:

" . . .

"4. Public Property -- All property, whether real or personal belonging exclusively to this State, or any political subdivision thereof . . . "

It has been repeatedly held by the courts of this State that this provision of the statutes exempts public free school land from taxation. Abney v. State, 20 Civ. App. 101, 47 S. W. 1042; Pitts v. Booth, 15 Tex. 453; Upshur v. Pace, 15 Tex. 531.

By special statutory provision, however, the State requires those holding public free school land under lease or contract of purchase to pay taxes upon their holdings. This provision, which is Article 7173, R. C. S. 1925, reads as follows:

"Property held under a lease for a term of three years or more, or held under a contract for the purchase thereof, belonging to this State, or that is exempt by law from taxation in the hands of the owner thereof, shall be considered for all the purposes of taxation, as the property of the person so holding the same, except as otherwise specially provided by law. . . "

Only the value of the interest held by the lessee or purchaser is taxable under this provision, Daugherty vs. Thompson, 71 Tex. 192, 9 S. W. 99; State v. Taylor, 72 Tex. 297, 12 S. W. 176; Montgomery v. Peach River Lbr. Co., 54 Tex. Civ. App. 143, 117 S. W. 1063.

The delinquent taxes involved in your inquiry were undoubtedly levied against this property under the quoted provision of the statutes. Your first inquiry is whether or not such taxes follow the land into the hands of the subsequent purchaser after forfeiture of the purchase contract of the first purchaser.

Our first consideration in arriving at a solution of the problems presented by this inquiry is the effect of the sale of March 15, 1900, upon the title to the land in question. Did that sale vest legal title thereto in the purchaser subject to defeasance upon default of such purchaser?

If the sale had the effect of vesting legal title in the purchaser, then the State by its forfeiture merely acquired the title of the purchaser and such title would, of course, be subject to all liens which accrued against it in the hands of such purchaser.

On the other hand, if the purchaser did not acquire legal title to the land by that sale and legal title remained in the State, the forfeiture merely ended the purchaser's contractual right to acquire the title by fulfilling his contract. Tax liens which came into existence by virtue of the purchaser's failure to pay the taxes levied then could not affect the State's superior title. Under this latter analysis it would follow as an inevitable conclusion that no lien attached to the land in question and that the subsequent purchaser took the land free of any such lien.

We are firmly of the opinion that the first purchaser under his contract of March 15, 1900, did not acquire legal title to Section 14, Certificate 1/1500, T. & P. Ry. Co., 650 acres in Bowie County. Under our statutes no patent to the land would issue until the purchase price had been paid in full. Article 5413, R. C. S., 1925, which so provides, reads as follows:

"The Commissioner (of the General Land
Office) shall issue patents when it appears
from the books in his office that full pay-
ment for the land has been made where payment
is required, and all legal fees due thereon
have been paid into said office and not with-
drawn, including the legal fees for the record-
ing of said patent in the counties in which
the land may be located."

Until these prerequisites are complied with and a
patent is issued, legal title to such land remains in the
State. We direct your attention to the authorities herein-
after set out, which support this conclusion.

"Since the passage of the Act which estab-
lished the general land office and provided for
issuing patents, no law has been passed which
recognized any other method of extending titles
from the State to those who acquired rights to
specific portions of its public domain." Taylor
v. Hall, 71 Tex. 213, 220, 9 S. W. 141. See also
Caprito v. Grisham-Hunter Corp., (Civ. App.) 128
S. W. (2d) 149; Saunders v. Hart, 57 Tex. 8;
and 34 Tex. Jur. 256, Sec. 181.

Under a contract of purchase, the title to the land
is held by the State subject to the right of the purchaser
"to acquire title by compliance with the obligations assumed
by him to the State." State v. Elza, 109 Tex. 256.

"The title (to school land) remains in the State
and the purchaser has only the right to acquire it by con-
tinued compliance with the conditions prescribed by statute."
Williams v. Finley, 99 Tex. 474, 90 S. W. 1087. (Parenthet-
ical matter added).

The right which the purchaser acquires through com-
pliance with the initial requirements of the statute has been
described as "an inchoate right to the land which may be per-
fected by performance of other specified acts." 34 Tex. Jur.
176, Sec. 119, citing Perez. v. Canales, 69 Tex. 674, 678, 7
S. W. 507 and Canales v. Perez, 65 Tex. 291. See also Boykin
v. Southwest Texas Oil & Gas Company, (Comm. App.) 256 S. W.
581, affirming 206 S. W. 216.

Upon a declaration of forfeiture by the State all of the rights of the purchaser under his contract of purchase and the rights of those holding or claiming under or through him, revest in the State and the land becomes a part of the public school land and subject to sale as such. Whitaker v. McCarty, (Com. App.) 221 S. W. 945, reversing 188 S. W. 502. See also 2 Tex. Jur. 32, Sec. 13.

In the case of Whitaker v. McCarty, supra, it was held that, even though the rights of a purchaser may be divested under the Statute of Limitations by one holding adversely to him, such rights as are acquired by the adverse possessor against the purchaser are divested by forfeiture of the contract of purchase by the state and that such rights do not survive after the forfeiture.

It is our opinion that the rule of Whitaker v. McCarty is equally applicable to any claim against the purchaser for unpaid taxes and that such claim likewise does not survive the forfeiture.

The holding of the Supreme Court in the recent case of Danciger v. State, et al. 140 Tex. ----., 166 S. W. (2d) 114, lends support to the conclusion that no lien attached to the State's superior title and that forfeited school land returned to the State free of all tax liens. Chief Justice Alexander, who wrote the opinion of the Court, states that after forfeiture of the land to the State, taxes levied against the purchaser during the time he held the land should be collected by levy of execution upon property of such purchaser not exempt from execution by law.

Our conclusion is also in harmony with prior rulings of this department. We direct your attention to an opinion issued by this department during the administration of Attorney General B. F. Looney. The opinion which was written by Assistant Attorney General G. B. Smedley, who is now presiding judge of Section B of the Commission of Appeals of the Supreme Court, reads as follows:

"This department is in receipt of your letter of the 10th instant in which you desire to know whether public school land is subject to taxes assessed and levied against it prior to its forfeiture to the State for nonpayment of interest when

the owner of the land at the time of forfeiture repurchased it from the State.

"...

"It is true that the forfeiture by the Land Commissioner amounts to an election on the part of the State to rescind a contract made by the State with the purchaser upon the failure of the purchaser to perform his part of the contract; that is, to pay the interest, and it would appear that, when the State rescinded its contract, all title to the land was again vested in the State and all liens thereon were destroyed. This is undoubtedly true of those cases in which the land is subsequently sold by the State to a purchaser other than the owner who allowed the sale to be forfeited. However, it is our opinion that a different rule should be applied in those cases in which a purchaser allows his land to be forfeited and then repurchases it. It has been held that the affect of such action on the part of the purchaser of school land is not to destroy a lien in favor of an individual which existed against the land prior to the forfeiture, provided such purchaser himself repurchases the land. A different rule, however, is applicable when a person other than the original owner repurchases the land after forfeiture. Such purchasers take the property free from liens which existed against it prior to the forfeiture." Opinions of the Attorney General of Texas, 1912-1914, page 527.

What we have stated above answers your first question.

In the situation outlined in your second question, the land involved was part of the public domain on January 1st, and was segregated from the public domain after that date by sale under a contract of purchase. You wish to know whether the land is subject to tax in the hands of the purchaser for the taxable year beginning immediately prior to the purchase from the State, the purchaser having held the land during part of that taxable year. We believe this question is specifically

answered by statute. We quote from Article 7151, R. C. S., 1925, as follows:

"All property shall be listed for taxation between January 1 and April 30 of each year, when required by the assessor, with reference to the quantity held or owned on the first day of January in the year for which the property is required to be listed or rendered. Any property purchased or acquired on the first day of January shall be listed by or for the person purchasing or acquiring it. If any property has, by reason of any special law, contract or fact, been exempt or has been claimed to be exempted from taxation for any period or limit of time, and such period of exemption shall expire between January 1, and December 31 of any year, said property shall be assessed and listed for taxes as other property; but the taxes assessed against said property shall be for only the pro rata of taxes for the portion of such year remaining." (Underscoring ours).

You are therefore respectfully advised:

(1) That the subsequent purchaser of school land, following the forfeiture of a prior contract of purchase under which the land had been sold to another, takes the land free of all taxes and tax liens.

(2) That a purchaser who acquires the land after January 1st but prior to December 31st of any year is liable for taxes for the period during that year that he held the land and is bound to pay a pro rata portion of the taxes for that year equivalent to the proportion that the time he held the land bears to the entire year.

Trusting that we have fully answered your inquiry and that you will call upon us if we can be of any further assistance, we are

Yours very truly,

ATTORNEY GENERAL OF TEXAS

/signed/

By

Peter Maniscalco
Assistant

APPROVED APR. 19, 1943
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS
APPROVED OPINION COMMITTEE
BY BWB , CHAIRMAN
PM:fo:mrj
O.K.
CCR