# IN THE SUPREME COURT OF TEXAS

════════════

No. 10-1020

════════════

TEXAS DEPARTMENT OF TRANSPORTATION AND CITY OF EDINBURG,
PETITIONERS,

v.

A.P.I. PIPE AND SUPPLY, LLC AND PAISANO SERVICE COMPANY, INC.,
RESPONDENTS

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

**Argued September 12, 2012**

JUSTICE WILLETT delivered the opinion of the Court.

JUSTICE LEHRMANN filed a concurring opinion, in which JUSTICE GUZMAN joined.

Texas legal rules governing real-estate transactions demand assiduousness, lest uncertainty subvert the orderly transfer of property. This inverse-condemnation dispute over ten acres in Hidalgo County asks a simple question: Who has title to the parcel? The answer turns on the validity of conflicting recorded judgments:

1.  2003 Judgment—which the Texas Department of Transportation (TxDOT) and the City of Edinburg claim gives the City fee-simple ownership, subject to a drainage easement granted to TxDOT.

2.  2004 Judgment—which A.P.I. Pipe Supply, LLC and Paisano Service Company, Inc. (collectively API) claim gives API fee-simple ownership,

subject to a drainage easement granted to the City (and, via subsequent conveyance, to TxDOT).

In 2005, TxDOT began its drainage project, and API, relying on the 2004 Judgment, brought a takings claim for the value of the removed soil. TxDOT counters that API lacks any ownership interest because the 2004 Judgment, which purports to declare the 2003 Judgment "null and void," is itself void—to which API replies, even if the 2003 Judgment controls, API is an "innocent purchaser" entitled to ownership under Property Code section 13.001.

We agree with TxDOT. The void 2004 Judgment cannot supersede the valid 2003 Judgment; API is statutorily ineligible for "innocent purchaser" status; and equitable estoppel is inapplicable against the government in this case. Because API's takings claim fails, we reverse the court of appeals' judgment and dismiss the suit.

## I. Facts

The chain of title contains conflicting records, so we first describe how the City, TxDOT, and API obtained their purported interests in the land.

### A. The 2003 Judgment Giving the City Ownership

Herschell White originally owned the land, and the City brought a condemnation action so it could dig a drainage channel. As compensation for the land, the commissioners awarded, and White accepted, $207,249 (plus $17,000 for damage to the remainder of the property). The special commissioners' report described the interest conveyed as a "right-of-way" but also incorporated by reference the City's original petition for condemnation, which described the interest sought as a "fee

2

title." No one objected to the special commissioners' award, and the trial court adopted it as the judgment of the court (the 2003 Judgment).[1]

## B. The 2004 Judgment Nunc Pro Tunc Giving API Ownership

A year later, the same trial court entered a "Judgment Nunc Pro Tunc" (the 2004 Judgment), which was agreed to by the City's and White's attorneys. A TxDOT employee apparently also approved the 2004 Judgment by email.[2]

The 2004 Judgment purported to render the 2003 Judgment "null and void." The 2004 Judgment states that the City's interest in the land was a "right of way easement" obtained "for the purpose of opening, constructing and maintaining a permanent channel or drainage easement . . . ." Unlike the 2003 Judgment, the 2004 Judgment did not incorporate the special commissioners' report or the City's original condemnation petition. Rather, it referred to the City's interest *only* as an easement, not fee-simple ownership.

## C. Subsequent Title Transfers

Three months after the trial court signed the 2004 Judgment, White sold the ten acres and some surrounding property to API.[3] Both the 2003 Judgment and the 2004 Judgment were recorded in the county registry before API purchased the property. In 2005, the City granted TxDOT an easement to build a drainage ditch and to remove any excavated "stone, earth, gravel or caliche."

---

[1] *See* TEX. PROP. CODE § 21.061 (providing that if no party objects to the findings of the special commissioners, the trial court "shall adopt the commissioners' findings as the judgment of the court").

[2] The record is unclear as to why the parties agreed to the 2004 judgment, or why TxDOT, which did not yet have an interest in the property, would agree to the nunc pro tunc judgment.

[3] API paid $292,800 for approximately 34 acres, including the 9.869 acres at issue in this case.

## II.  Proceedings Below

When TxDOT started digging, API filed an inverse-condemnation action against the City and TxDOT over the removed dirt.  TxDOT and the City filed a plea to the jurisdiction, which the trial court denied.  The court of appeals affirmed, holding the 2004 Judgment was void but saying the record was unclear as to whether API had notice of the 2003 Judgment.[4]

Upon remand to the trial court, TxDOT and the City produced evidence that the 2003 Judgment was indeed recorded in the county registry.  TxDOT and the City filed a second plea to the jurisdiction, arguing that, because the 2004 Judgment was void and API had notice of the 2003 Judgment, the City held fee-simple title to the land, subject only to TxDOT's easement.  The trial court denied the second plea to the jurisdiction, and the court of appeals affirmed, concluding that API was a good-faith purchaser for value since the 2004 Judgment superseded the 2003 Judgment.[5]

## III.  Discussion

Whether a court has jurisdiction is a matter of law we decide de novo.[6]  Evidence can be introduced and considered at the plea to the jurisdiction stage if needed to determine jurisdiction.[7]

A trial court lacks jurisdiction and should grant a plea to the jurisdiction where a plaintiff "cannot establish a viable takings claim."[8]  Further, "[i]t is fundamental that, to recover under the

---

[4] *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, No. 13-07-221-CV, 2008 Tex. App. LEXIS 276, at *8–*14 (Tex. App.—Corpus Christi Jan. 10, 2008, no pet.) (mem. op.).

[5] 328 S.W.3d 82, 90–92.

[6] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[7] *Id.* at 227.

[8] *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 491 (Tex. 2012).

4

constitutional takings clause, one must first demonstrate an ownership interest in the property taken."[9] Thus, if API does not own the disputed land, the takings claim is not viable and the trial court lacks jurisdiction. Given that the dispositive question is whether API is the property owner, the trial court was correct to consider the 2003 and 2004 Judgments as extrinsic, undisputed evidence.

For the reasons discussed below, we hold that API does not own the land and cannot assert the good-faith purchaser[10] or equitable estoppel doctrines. We thus conclude that the trial court should have granted the plea to the jurisdiction.

## A. The 2004 Judgment in Favor of the City Was Void.

A judgment nunc pro tunc can correct a clerical error in the original judgment, but not a judicial one.[11] An attempted nunc pro tunc judgment entered after the trial court loses plenary jurisdiction is void if it corrects judicial rather than clerical errors.[12] "A clerical error is one which does not result from judicial reasoning or determination."[13] Even a significant alteration to the original judgment may be accomplished through a judgment nunc pro tunc so long as it merely

---

[9] *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004).

[10] We have jurisdiction over this interlocutory appeal under Texas Government Code section 22.225(c) because of a conflict between the court of appeals' decision and a decision of another court of appeals. *See* TEX. GOV'T CODE §§ 22.001(a)(2), .225(c). As explained below, the court of appeals' misapplication of the good-faith purchaser doctrine is inconsistent with *Wall v. Lubbock*, 118 S.W. 886, 888 (Tex. Civ. App.—Austin 1908, writ ref'd).

[11] *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986) (per curiam).

[12] *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex. 1973).

[13] *Andrews*, 702 S.W.2d at 585.

corrects a clerical error.[14]  If "the signed judgment inaccurately reflects the true decision of the court," then "the error is clerical and may be corrected."[15]

Here, the change was undeniably significant.  The 2003 Judgment granted a fee simple to the City, while the 2004 Judgment purported to turn the City's outright ownership into a mere easement.  Again, the fact that the change was significant is not fatal to the 2004 Judgment's nunc pro tunc status.  However, TxDOT and the City produced evidence showing that the 2003 Judgment correctly reflected the underlying judicial determination,[16] and no party produced any evidence indicating that the 2004 Judgment was merely correcting a clerical error.  That is, nothing suggests that the 2003 Judgment really meant to convey to the City an easement rather than a fee simple.

Further, the trial court in this case was by law required to adopt the award of the special commissioners, who in turn granted the fee-simple title the City sought in its condemnation petition.  If parties do not timely object to a special commissioners' report, the trial court is required to enter "the [special] commissioners' findings as the judgment of the court."[17]  Objection is timely only if raised within 20 days of the special commissioners' award.[18]  Here, the parties point to no evidence

---

[14] *See id.* at 584–86 (using a nunc pro tunc judgment to add an easement to a deed; a prior court order had required the easement, so exclusion of the easement was clearly a clerical mistake).

[15] *Id.* at 586.

[16] There is circumstantial evidence that the 2003 Judgment intended to award a fee simple rather than an easement.  The condemnation award approved by the court in the 2003 Judgment provided compensation of over $207,000 for 10 acres in April 2003, whereas API purchased that tract plus 20 more acres for approximately $90,000 more in August 2004.

[17] TEX. PROP. CODE § 21.061.

[18] *Id.* § 21.018.  The time for making objections to the special commissioners' award is tolled if the parties are not given proper notice of the special commissioners' award.  *John v. State*, 826 S.W.2d 138, 141 n.5 (Tex. 1992).  However, there is no evidence here that there were any notice problems regarding the award.

of a timely objection. Indeed, the 2003 Judgment indicated that no party objected to the award. Therefore, the trial court could "only perform its ministerial function and render judgment based upon the commissioner's award."[19] The trial court did just that in the 2003 Judgment, awarding compensation for fee simple title. Conversely, the 2004 Judgment exceeded the scope of this "ministerial function" by shrinking the interest awarded by the special commissioners from a fee simple to an easement. As the special commissioners' award was not changed pursuant to timely objection, the 2004 Judgment was void.

One more timing issue cuts against API: the expiration of the trial court's plenary power. Such power usually lasts 30 days.[20] The 2004 Judgment, though labeled a Judgment Nunc Pro Tunc, was undeniably a substantive alteration to the 2003 Judgment. However, the trial court's plenary power to make substantive alterations had expired 300-plus days before the 2004 Judgment was rendered.[21]

Because the 2004 Judgment was void, it did not convey anything to anyone. Instead, under the 2003 Judgment, the City continued to hold fee-simple title. White continued to have no interest in the land, and API could not buy from White what White did not own.

---

[19] *John*, 826 S.W.2d at 141 n.5. *See also Pearson v. State*, 315 S.W.2d 935, 938 (Tex. 1958) (noting that if there are no objections to the special commissioners' award, "[n]o jurisdiction is conferred upon the court to do anything more than accept and adopt the [special commissioners'] award as its judgment, and this follows by operation of law and the ministerial act of the county judge").

[20] *See* TEX. R. CIV. P. 329b(d)–(f).

[21] Here, the 2004 Judgment was entered 351 days after the 2003 Judgment.

**B. The Innocent-Purchaser and Equitable Estoppel Doctrines Are Inapplicable.**

API urges that, even if the 2004 Judgment is void such that White had no interest to convey, API should still prevail because it depended on the 2004 Judgment when it bought the land from White. API presents two theories, neither persuasive.

**1. The Innocent-Purchaser Statute, by its Terms, Does not Apply to Recorded Judgments.**

The court of appeals held that API was a good-faith purchaser for value. However, we refused the writ of error in a case holding that this doctrine does not protect a purchaser whose chain of title includes a void deed: "One holding under a void title cannot claim protection as an innocent purchaser."[22]

Codified at Property Code section 13.001, the innocent-purchaser doctrine is simply inapplicable here:

> A conveyance of real property or an interest in real property . . . is void as to . . . a subsequent purchaser for a valuable consideration without notice unless the instrument has been . . . proved and filed for record as required by law.[23]

By its terms, the statute protects purchasers from *unrecorded* property conveyances—covert, off-the-books transfers that leave buyers unaware of adverse interests. But one cannot be "innocent" of a *recorded* judgment, and here, API concedes it knew of the recorded 2003 Judgment before it purchased the property.

---

[22] *Wall*, 118 S.W. at 888.

[23] TEX. PROP. CODE § 13.001(a).

API essentially argues that the 2003 Judgment was superseded by the 2004 Judgment because the latter purported to nullify the former. But our caselaw does not support the idea that earlier instruments in a chain of title can be rendered meaningless by later instruments that are contradictory.[24] Instead, we refused the writ of error in a case that explicitly held that the innocent-purchaser doctrine cannot protect those who claim under a void deed.[25] Further, the consistent theme in our cases is that "[a] purchaser is charged with knowledge of the provisions and contents of recorded instruments. Purchasers are also charged with notice of the terms of deeds which form an essential link in their chain of ownership."[26] That is, a purchaser is deemed to have notice of all recorded instruments, not just the most recent one. Thirty years ago, we stated in *Westland Oil Development Corp. v. Gulf Oil Corp.*:

> *[A]ny* description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of *all the matters referred* to and affecting the estate is obtained.[27]

In other words, API, constructively and actually aware of the recorded 2003 Judgment, was responsible for squaring it with the contradictory 2004 Judgment.

---

[24] API does not argue, and we do not consider, whether the 2004 Judgment is a "correction instrument" under recently enacted sections 5.027–.031 of the Property Code.

[25] *Wall*, 118 S.W. at 888.

[26] *Cooksey v. Snider*, 682 S.W.2d 252, 253 (Tex. 1984) (per curiam).

[27] 637 S.W.2d 903, 908 (Tex. 1982) (citations and quotations omitted) (emphases in original).

*Slaughter v. Qualls*,[28] on which the court of appeals relied, is not to the contrary. *Slaughter* suggests that a recorded but void foreclosure sale could protect a subsequent good-faith purchaser.[29] However, the statement was dicta because the subsequent purchaser's claim was not before the Court.[30] In any event, the *Slaughter* dicta suggests that such purchasers merit protection under equitable estoppel principles (describing a contrary result as "inequitable"[31]) and not under the innocent-purchaser doctrine codified in the Property Code. Section 13.001 defines the elements of innocent-purchaser status for *all* cases, and courts may not disregard or rewrite the statute when they believe straight-up application would be inequitable. The statute is categorical and makes no case-by-case exceptions: A purchaser with notice of an adverse interest cannot claim innocent-purchaser status.

---

[28] 162 S.W.2d 671 (Tex. 1942).

[29] *Id.* at 675.

[30] *Id.* at 674.

[31] That is, *Slaughter* says (in its explanation of its dicta):

It is true that under circumstances such as we have here, those who purchased interests in or took liens on the land in good faith from [the purchaser of a deed voided by a wrongful foreclosure sale] acquired good title as against [the debtor who had originally executed the deed of trust]; but this is so *not on the theory that the title actually passed,* but rather on the theory that [the debtor], by the execution of the deed of trust, made it possible for the trustee to create the appearance of good title in [the purchaser at the foreclosure sale], and *it would be inequitable* to permit [the debtor] now to show otherwise as against those who have purchased in good faith in reliance thereon.

*Id.* at 675 (emphases added).

## 2. API Cannot Prevail on Equitable Estoppel, Which Is Inapplicable Against the Government on These Facts.

API argues that TxDOT's acquiescence to the 2004 Judgment bars it from objecting now to what it accepted then. While the argument has a certain force—purchasers should be able to rely upon facially valid judgments—this argument goes to equitable estoppel, a doctrine inapplicable against the government in this case.

For estoppel to apply against the government, two requirements must exist: (1) "the circumstances [must] clearly demand [estoppel's] application to prevent manifest injustice,"[32] *and* (2) no governmental function can be impaired.[33] Neither requirement exists here.

As to the first requirement, we have applied estoppel to prevent manifest injustice if, "officials acted deliberately to induce a party to act in a way that benefitted the [government]."[34] Here, no evidence suggests deliberate inducement (as opposed to mistaken acquiescence) by TxDOT or the City, or that they benefitted when the City's fee title was erroneously relegated to a mere easement.[35] (White benefitted handsomely, though, being paid twice for fee title to the same

---

[32] *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 774 (Tex. 2006) (quotations omitted).

[33] *Id.* at 776–78.

[34] *Id.* at 775.

[35] Apparently for the first time, API argued at oral argument before this Court that TxDOT and the City *did* receive a benefit from their interest being merely an easement. API alleges that it let the government use other portions of API's property, which API thought was required so that the government could make reasonable use of its purported easement. However, we find this argument unavailing. First, we note that this last-minute allegation of the government's benefit from the easement is not preserved for our review. TEX. R. APP. P. 33.1(a). Further, this last-minute allegation is not even enough to lead us to remand to allow API to amend its jurisdictional allegations. Any purported benefit to TxDOT and the City is minimal compared to the substantial loss to the government for giving up its right to fee-simple title. This purported benefit is "simply too attenuated to establish grounds for equitable relief." *Super Wash*, 198 S.W.3d at 775. Finally, availability of "alternative remedies weighs strongly against" estoppel against the government, *id.*, and API may well have other remedies available for the government's alleged wrongful use of API's surrounding property

11

property.) This case stands in stark contrast to two cases where we have held the government estopped—cases where the government stalled private citizens from providing proper notice of claims until after the notice deadline had passed.[36]

We have also held that the fact that a governmental error was "discoverable" militates against applying estoppel.[37] The error here was discoverable because API could have examined the conflicting judgments and seen that the 2004 Judgment was issued in error. Red flags were plentiful: (1) the 2004 Judgment was styled a nunc pro tunc even though it made a judicial change, not a clerical one; (2) it was issued long after the 2003 Judgment; (3) it nowhere mentioned the unobjected-to special commissioners' award. We thus conclude that the manifest-injustice requirement for applying estoppel against the government is not satisfied.

The second requirement—that there is no impairment to a governmental function—is also absent. Designing and planning a drainage ditch is a governmental function,[38] and applying estoppel here would impair that governmental function. If TxDOT and the City are estopped, their ability to manage the drainage project would have to accommodate API's ownership of the land, complicating

_____

in digging the ditch.

[36] *Super Wash*, 198 S.W.3d at 774–76 (explaining the significance of the only two cases where we have applied estoppel against the government, *Roberts v. Haltom City*, 543 S.W.2d 75 (Tex. 1976) and *City of San Antonio v. Schautteet*, 706 S.W.2d 103 (Tex. 1986)).

[37] *Super Wash*, 198 S.W.3d at 775.

[38] *City of Tyler v. Likes*, 962 S.W.2d 489, 501 (Tex. 1997) (holding that, under common law, "design and planning" of drainage ditches was a "quasi-judicial function[] subject to governmental immunity," whereas "the acts of constructing and maintaining a storm sewer are proprietary at common law"). The Texas Tort Claims Act also classifies governmental acts related to "sanitary and storm sewers" as "governmental functions." TEX. CIV. PRAC. & REM. CODE § 101.0215(9). While this legislative interpretation of "governmental functions" is binding only in the context of the Tort Claims Act, we have previously found that "the statute is helpful" in our interpretation of whether an activity is a "governmental function." *Super Wash*, 198 S.W.3d at 776–77.

the government's ability to carry out its project.[39]  The land was purchased through eminent domain for the precise purpose of digging a drainage ditch, and restricting the government's ability to freely dig on the land burdens that undisputed governmental function.

## IV.  Conclusion

The 2004 Judgment was void.  The pleadings and evidence establish that API holds no interest in the land and thus "cannot establish a viable takings claim,"[40] meaning the trial court lacked jurisdiction.[41]  We reverse the court of appeals' judgment and dismiss the case.

_____
Don R. Willett
Justice


**OPINION DELIVERED:** April 5, 2013

---

[39] If we found that the government was estopped, the government would have only a few options for removing dirt from the property, such as paying API to remove the dirt, relying on API to remove the dirt, or obtaining API's consent to let the government dump the dirt on API's surrounding land.  Any of these options could impair plans to expand or improve the ditches by impeding the dirt-removal process.

[40] *Hearts Bluff Game Ranch*, 381 S.W.3d at 491.

[41] *Id.* at 491–92.