**Opinion issued December 19, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00101-CV

———————————

**PIZZA HUT OF AMERICA, L.L.C., Appellant**

**V.**

**HOUSTON COMMUNITY COLLEGE SYSTEM, Appellee**

---

**On Appeal from the County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1043516**

---

## MEMORANDUM OPINION

In this condemnation proceeding, appellant Pizza Hut of America, L.L.C.

("Pizza Hut"), challenges the trial court's judgment dismissing its claims for lack

of standing. Pizza Hut was a tenant of the Woodridge Plaza Shopping Center

("Woodridge Plaza") at the time that appellee Houston Community College

System ("HCCS") condemned the property. As part of the condemnation proceedings, a condemnation award of $427,100 was designated to be paid to all of Woodridge Plaza's tenants, and Pizza Hut sought $7,100 as its pro rata share from that amount. The trial court concluded, based on language in Pizza Hut's lease for the Woodridge Plaza location, that Pizza Hut had suffered no impairment of its use of the premises as a result of the condemnation proceedings and, thus, Pizza Hut lacked standing and was not entitled to any portion of the condemnation award. In its sole issue on appeal, Pizza Hut contends that it has standing to participate in the condemnation proceedings and to seek a portion of those funds awarded to the Woodridge Plaza tenants.

We affirm.

## Background

In February 2014, HCCS filed its petition for condemnation against Compass Investors Group, L.L.C. ("Compass") to acquire Woodridge Plaza for educational purposes and the case was referred to special commissioners. In October 2014, the special commissioners awarded Compass $12,500,000 for its ownership interest in Woodridge Plaza. HCCS then filed a second condemnation petition naming the tenants of Woodridge Plaza as defendants. After two hearings, the special commissioners awarded $427,100 to all of the Woodridge Plaza tenants. The special commissioners specifically apportioned $7,100 of the total

2

funds to Pizza Hut because it was a tenant at the time of the special commissioners' hearings. HCCS then deposited the $427,100 into the registry of the court. All parties contested the special commissioners' award, and the trial court consolidated causes of action against Compass and the tenants for further judicial proceedings.

In October 2015, HCCS gained possession of Woodridge Plaza and continued operating it based on the operating leases the tenants had with Compass, including Pizza Hut's lease with Compass. That lease for Pizza Hut's restaurant space was a standard form lease provided by Pizza Hut. It contained a section pertaining to remedies in the event of a condemnation. The lease stated:

> Condemnation means any impairment of Tenant's use of the Premises or the Common Area, or both, by act or omission of government authority, including without limitation, a change in applicable law, exercise of the power of eminent domain, or exercise of other government authority such as alteration of a public street directly serving the Premises or the Common Area, or both. . . .
> The Condemnation Award shall belong to the Landlord, however, Tenant shall be entitled to the Unamortized Cost of Tenant Improvements, plus Tenant's relocation expenses as determined by the condemning entity or court of law. Unamortized Cost of Tenant Improvements means that portion of all costs of developing and constructing Tenant Improvement which, if amortized on a straight line basis over the Term, has not been recovered by Tenant as of the date of the Condemnation. . . .

Under HCCS's operation as the premises owner, Pizza Hut continued operating its business at the Woodridge Plaza location—using its established equipment and improvements—at a profit and without interruption of physical

3

impairment by the condemnation. In April 2016, while the condemnation proceedings were still pending, Pizza Hut sold all ninety of its Houston locations, including the Woodridge Plaza location. The sale price included improvements to the Woodridge Plaza location but not the leasehold interest. Pizza Hut retained the leasehold interest due to the pending condemnation proceedings.

In December 2016, HCCS filed a plea to the jurisdiction challenging Pizza Hut's standing as a party to the condemnation proceedings. The trial court granted HCCS's motion and dismissed Pizza Hut as a party from the proceeding without prejudice. The remaining parties subsequently settled and the trial court granted a joint motion to dismiss with prejudice. This appeal between Pizza Hut and HCCS followed.

## Standing

In its sole issue, Pizza Hut argues that, as an owner of a leasehold interest at the time of the taking, it had standing to participate in the condemnation proceeding.

## A. Standard of Review and Applicable Law

Standing is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Thus, standing is never presumed, cannot be waived, and can be raised for the first time

4

on appeal. *Id.* at 443–45. We review standing under the same standard by which we review subject-matter jurisdiction generally. *Id.* at 446. Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex 2004).

A trial court decides a plea to the jurisdiction by reviewing the pleadings and any evidence relevant to the jurisdictional inquiry. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *see also A.P.I. Pipe & Supply, LLC*, 397 S.W.3d at 166 ("Evidence can be introduced and considered at the plea to the jurisdiction stage if needed to determine jurisdiction."). We review a trial court's ruling on a plea to the jurisdiction de novo, construing the pleadings liberally in favor of the plaintiff while considering the pleader's intent. *Miranda*, 133 S.W.3d at 226–28.

When a party cannot establish a viable takings claim, the trial court "lacks jurisdiction and should grant a plea to the jurisdiction." *A.P.I. Pipe & Supply, LLC*, 397 S.W.3d at 166; *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 446 ("The general test for standing in Texas requires that there (a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." (internal quotation omitted)). "Further, '[i]t is fundamental that, to recover under the constitutional takings clause, one must first demonstrate an ownership

5

interest in the property taken.'" *A.P.I. Pipe & Supply, LLC*, 397 S.W.3d at 166 (quoting *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004)). A lessee generally has standing in condemnation proceedings and is entitled to share in a condemnation award when part of its leasehold interest is lost by condemnation. *Texaco Ref. & Mktg., Inc. v. Crown Plaza Grp.*, 845 S.W.2d 340, 342 (Tex. App.—Houston [1st Dist.] 1992, no writ). However, a tenant may waive this right in the lease or elsewhere. *See, e.g.*, *Motiva Enters., LLC, v. McCrabb*, 248 S.W.3d 211, 214 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (holding that where parties contracted for lease to terminate in event of condemnation of leased premises, lessee of condemned property had no compensable leasehold interest following automatic termination of its lease); *Fort Worth Concrete Co. v. State*, 416 S.W.2d 518, 521 (Tex. Civ. App.—Fort Worth 1967, writ ref'd n.r.e.) ("A tenant whose lease provides for its termination upon the taking of the leased premises for a public use, is entitled to no compensation when it is condemned.").

## B.     Analysis

Pizza Hut argues on appeal that it has standing in the condemnation proceedings with HCCS because, as a lessee, it is entitled to share in the condemnation award. However, to have standing, Pizza Hut must establish more than its mere identity as a leaseholder—it must show that it has a viable takings

6

claim. *See A.P.I. Pipe & Supply, LLC*, 397 S.W.3d at 166. Here, that involves construing Pizza Hut's lease that sets forth specific terms concerning its interest in the event of a condemnation. *See Motiva Enters., LLC*, 248 S.W.3d at 214 (recognizing that parties have right to contract for different remedies in event of condemnation such as, in that case, termination of lease in event of condemnation).

In construing a written lease, we must "ascertain the true intentions of the parties as expressed in the instrument." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). The terms of the lease must be "given their plain, ordinary, and generally accepted meanings unless the [lease] itself shows them to be used in a technical or different sense." *Id.*

The lease states that "[c]ondemnation means any impairment of Tenant's use of the Premises or the Common Area, or both, by act or omission of government authority" and that, although any "Condemnation Award shall belong to the Landlord," Pizza Hut as the tenant is entitled to "the Unamortized Cost of Tenant Improvements, plus Tenant's relocation expenses as determined by the condemning entity or court of law." Thus, without a showing of impairment—specifically, costs of tenant improvements and relocation expenses—Pizza Hut cannot show a viable takings claim or any harm resulting from the condemnation that would be resolved by its continuing as a party to the condemnation proceedings. *See A.P.I. Pipe & Supply, LLC*, 397 S.W.3d at 166 (discussing

7

standing principles in constitutional takings cases); *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (discussing general standing principles).

Pizza Hut acknowledges that the condemnation did not impair its physical access to or use of the Woodridge Plaza location; rather, it argues that the uncertainty created by the condemnation constituted an impairment. Pizza Hut asserts that it did not know how long it would be able to continue operating in the building after HCCS became the owner. However, the uncontested jurisdictional evidence indicates that during the time HCCS had control over Woodridge Plaza, Pizza Hut was able to continue operating in that location at a profit until it sold its franchise for that location to a third-party buyer in April 2016, when it was paid for the costs of all improvements to the store by the new owner. There was likewise no evidence that Pizza Hut incurred any relocation costs related to the condemnation.

We conclude that Pizza Hut has failed to demonstrate, under the terms of its lease, a viable interest in HCCS's condemnation of Woodridge Plaza. Accordingly, the trial court properly dismissed it from the case. *See A.P.I. Pipe & Supply, LLC*, 397 S.W.3d at 166; *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

**Conclusion**

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Caughey.