# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00202-CV

**Karen Cernoch, Appellant**

**v.**

**Frank Cernoch, Appellee**

### FROM THE 155TH DISTRICT COURT OF FAYETTE COUNTY
### NO. 2020V-222, THE HONORABLE JEFF R. STEINHAUSER, JUDGE PRESIDING

## O R D E R   A N D   M E M O R A N D U M   O P I N I O N

**PER CURIAM**

This case presents us with a signed final divorce decree that does not appear to comport with the trial court's oral rendition of judgment. On November 11, 2020, the parties entered into a mediated settlement agreement (MSA) regarding the division of their property. During the March 19, 2021 hearing on petitioner Frank Cernoch's motion to enter the divorce decree, the trial court asked Karen Cernoch's attorney whether the proposed decree, drafted by Frank's attorney, "follows the MSA" or "var[ies] from" it. *See Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976) (per curiam) ("A final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement."). Karen's attorney stated that he believed there were "a couple issues" with the proposed decree. Frank's attorney clarified to the court that the proposed decree varied from the MSA by omitting a provision requiring Frank to pay Karen a specified sum upon her vacating

the marital residence.[1]  Arguing that Karen failed to timely vacate the residence, Frank's attorney stated, "[W]e're asking that the terms of payment be forfeited."

The court expressed its reluctance to "vary the terms of the MSA" because it was "supposed to follow the agreement."  Frank's attorney offered to "rephrase" the proposed decree "to make it state exactly the way it's stated in the MSA" and that "the rest of the decree is drafted entirely in compliance with the terms of the MSA."  The court inquired of Karen's attorney whether he agreed that the revisions proposed by Frank's attorney would make the decree "in full compliance with the MSA as agreed to by the parties."  Karen's attorney replied, "I do."  Thereafter the trial court stated:

> Ms. Anders [(Frank's attorney)], based on your representation that the proposed decree will now be fully in compliance with the MSA as you stated on the record altering it and based on what Mr. Bigham [(Karen's attorney)] said, I am granting your motion to enter the decree.  Please submit the proposed final decree of divorce in compliance with the MSA, and I will sign it as soon as I receive that.

The divorce decree that the trial court signed recited that the parties had reached the agreements therein in mediation and had each signed the MSA, which had been filed with the court.  It further provided, "This Final Decree of Divorce is stipulated to represent a merger of a mediation agreement and this Final Decree of Divorce.  To the extent there exist any differences

---

[1] The MSA identifies the sum as $100,000, with $10,000 to be paid from the IOLTA account of Frank's attorney on or before November 18, 2020, and the remaining $90,000 to be paid to Karen by Frank "on the date Karen vacates the Marital Residence."  In the preceding paragraph, the MSA provided, "Karen shall vacate the [M]arital [R]esidence . . . within 60 days of the date of this Agreement."  The MSA also identified two tracts of land, collectively referred to as the "Real Property," of which Karen was to receive "[t]he eastern most 40 acres."  Karen was required to "have the Real Property surveyed at her sole cost for the purpose of coming up with legal descriptions for the 40 acres she is receiving."  Frank was to receive the remaining portion of the Real Property.  Presumably the marital residence is located on the portion Frank was to receive because, "[o]nce Karen vacates the Marital Residence, she is not to return to any of the Real Property awarded to Frank," and "[o]nce the 40 acres is conveyed to Karen, Frank is not to come onto said 40 acres."

2

between the mediated settlement agreement and this Final Decree of Divorce, this Final Decree shall control in all interests." The final decree's award of property to each party was consistent with what the MSA provided, except that it omitted from its award of "Property to Respondent [Karen]" any reference to the $100,000 payment, and nowhere else does the decree reference such payment or the requirement that Karen vacate the marital residence. The written and signed final decree, therefore, does not appear to comport with the trial court's oral rendition of judgment, which granted Frank's motion to enter a decree "in compliance with the MSA."

After a trial court loses jurisdiction, it can only correct clerical errors in a judgment, which it does by way of a judgment nunc pro tunc. *Texas Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 167 (Tex. 2013). A clerical error is one that does not result from judicial reasoning or determination, and if "the signed judgment inaccurately reflects the true decision of the court, then the error is clerical and may be corrected." *Id.* (quoting *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986) (per curiam))); *see In re A.P.*, No. 07-10-00481-CV, 2011 WL 780525, at *2 (Tex. App.—Amarillo Mar. 7, 2011, order) ("A clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered," while "a judicial error arises from a mistake of law or fact that requires judicial reasoning to correct."). A judicial error—"an error which occurs in the rendering as opposed to the entering of a judgment"—cannot be altered by way of a judgment nunc pro tunc. *Escobar v. Escobar*, 711 S.W.2d 230, 231–32 (Tex. 1986).

"A court's judgment is its announcement of the resolution of the issues in a lawsuit and is rendered 'when the trial court officially announces its decision in open court or by written memorandum filed with the clerk.'" *State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015) (quoting *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995))). "A trial court renders

3

judgment orally when it announces rendition as a present act and not as an 'intention to render judgment in the future.'" *Id.* (quoting *S & A Rest. Corp.*, 892 S.W.2d at 858). The trial court stated at the conclusion of the hearing that it was "granting [Frank's] motion to enter the decree" and would sign the "proposed final decree" that is "in compliance with the MSA" "as soon as" the court received it. However, the court's written decree appears to diverge from the oral rendition of judgment granting a divorce that is "in compliance with the MSA" because the written decree omitted material provisions of the MSA. This Court cannot conclude, however, that the trial court orally pronounced judgment at the hearing or the terms of its pronouncement because those questions are questions of fact. *See Escobar*, 711 S.W.2d at 232; *E.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-19-00766-CV, 2020 WL 278349, at *2 (Tex. App.—Austin Jan. 17, 2020) (mem. op. & order).

We therefore abate the appeal and remand the case to the trial court. *See E.D.*, 2020 WL 278349, at *2. On remand, the trial court shall, on proper notice and as soon as practicable, conduct a hearing to determine whether the divorce decree incorrectly reflects the judgment of the court and, if so, whether the mistake is a clerical error subject to correction by way of a judgment nunc pro tunc. *See id.* In making its decision, the court may consider testimony from witnesses, such as by the attorney who prepared the decree, the reporter's record from the final hearing, the court's docket entries, written documents, the trial judge's personal recollection, and other record evidence. *See id.* The hearing shall be transcribed, and a supplemental reporter's record of the hearing shall be provided to this Court. *See id.*

If the trial court determines that the decree includes a clerical error, it shall sign a divorce decree nunc pro tunc reflecting the judgment of the court. *See id.* The trial court shall also prepare findings of fact and conclusions of law regarding the matters it considered in

4

conjunction with this order. The findings of fact and conclusions of law, any orders made in relation to this order, and the divorce decree nunc pro tunc—should such a decree be signed by the court—shall be included in a supplemental clerk's record. *See id.* We will reinstate the appeal upon receipt of the supplemental clerk's record and, if necessary, will allow Karen time to supplement her briefing.

The supplemental reporter's record and supplemental clerk's record shall be filed with the clerk of this Court within thirty days of the date of this order. Should additional time be needed to comply with this order, the trial court may request such time on or before the due date.

It is so ordered on April 22, 2022.


Before Justices Goodwin, Baker, and Smith

Abated and Remanded

Filed:   April 22, 2022

5