**Affirmed and Majority and Dissenting Opinions filed August 14, 2025.**



In The

# Fifteenth Court of Appeals

---

## NO. 15-24-00042-CV

---

## ONCOR ELECTRIC DELIVERY COMPANY LLC, Appellant

## V.

## PUBLIC UTILITY COMMISSION OF TEXAS, Appellee

---

**On Appeal from the 200th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-006507**

---

## OPINION

The question in this case is whether the district court had subject-matter jurisdiction to review an administrative order when the party seeking review filed a motion for rehearing from the order, but not from the order on rehearing. Because we conclude that the failure of appellant Oncor Electric Delivery Company LLC (Oncor) to file a motion for rehearing from the Public Utility Commission's (PUC or Commission) order on rehearing deprived the district court of jurisdiction, we affirm the district court's order granting the PUC's plea to the jurisdiction and

dismissing Oncor's suit.

## BACKGROUND

**Oncor's First Petition for Rate Increase**

Pursuant to the Public Utility Regulatory Act (PURA), in 2022, Oncor, an investor-owned electric utility, petitioned the PUC to raise its utility rates.[1] *See* Tex. Util. Code § 36.102(a) (providing that electric utility may not change its rates unless it files statement of its intent with PUC). Citing increased investment in providing electricity, acquisition of transmission and distribution assets, and Oncor's increased costs, Oncor requested an increase of approximately $251 million in revenue, representing a 4.5% increase. Oncor and its subsidiary, Oncor NTU, sought one set of system-wide rates for each customer class served.

A panel of Administrative Law Judges (ALJs) held a hearing on Oncor's petition and issued a proposal for decision in which the ALJs recommended a decrease in Oncor's requested annual retail base rate revenue. Oncor and several intervenors filed exceptions to the proposal for decision. After a lengthy open meeting, at which the PUC Commissioners discussed the exceptions, the PUC issued an order that adopted in part and rejected in part the ALJs' proposal for decision (Initial Order). The PUC's Initial Order resulted in a rate higher than that recommended by the ALJs, but lower than the rate requested by Oncor.

---

[1] PURA authorizes the PUC to establish and regulate rates of an electric utility. *See* Tex. Util. Code § 36.001(a). The established utility rate must be an amount that "will permit the utility a reasonable opportunity to earn a reasonable return on the utility's invested capital used and useful in rendering service" after recovering its reasonable and necessary operating expenses. *See id.* § 36.051. The utility's invested capital is also known as its "rate base." *See Cities for Fair Util. Rates v. Public Util. Comm'n*, 924 S.W.2d 933, 935 (Tex. 1996). PURA requires an electric utility to make periodic filings with the Commission to modify or review base rates charged by the utility. *See* Tex. Util. Code § 36.157(b).

**Oncor's Motion for Rehearing**

Oncor timely filed a motion for rehearing, challenging primarily the PUC's disallowance of (1) Oncor's "Capitalized and Annual O&M Expenses for Incentive Compensation and Non-Qualified Pension Costs," and (2) Oncor's "SPS Acquisition Adjustment." Oncor also requested what it characterized in its motion as "Technical Corrections" to several Findings of Fact and to one Conclusion of Law.[2] Oncor specifically stated that in requesting the Technical Corrections, it was not seeking reconsideration of the Commission's decision on any issue. Instead, according to Oncor's motion for rehearing, these portions of the Initial Order did not accurately reflect the PUC's decision as announced at the open meeting, and Oncor proposed the revisions to the Findings of Fact and Conclusions of Law to conform with the PUC's oral rulings.

PUC Commissioner Lori Cobos circulated an internal memorandum outlining several recommended modifications to the Findings of Fact and Conclusions of Law in the Initial Order. The PUC held an open meeting to discuss the motion for rehearing and the proposed changes to the order.

**The PUC's Order on Rehearing**

The PUC voted to grant Oncor's motion for rehearing in part and to deny it in part, adopting Commissioner Cobos's proposed changes in an order on rehearing, issued on June 30, 2023 (Order on Rehearing). It is undisputed that the PUC's Order on Rehearing did not address or modify disallowance of (1) "Capitalized and Annual

---

[2] Specifically, Oncor requested "Technical Corrections," in the form of modifications or deletions, to Findings of Fact 49, 93, 96, 98, 99, 101, 101, 102, 130, 143, 165a, 178, 179, 183, 245, 246, 248, 263, 278-81, 282, 367, 368, and 369, and to Conclusion of Law 24A. Oncor also requested the addition of a new Conclusion of Law, 24B.

O&M Expenses for Incentive Compensation and Non-Qualified Pension Costs," or (2) Oncor's "SPS Acquisition Adjustment." The Order on Rehearing did, however, make other changes corresponding to that portion of Oncor's motion for rehearing requesting "Technical Corrections."

For example, as pointed out by the PUC, the agency's addition of Finding of Fact 49A and 99A was in response to Oncor's argument that the Initial Order had failed to set a separate rate base for Oncor NTU, a wholly owned subsidiary of Oncor LLC that holds transmission assets in Northeast Texas. Specifically, the Initial Order was modified, in part, to add Findings of Fact 49A and 99A as follows:

> 49A. Oncor NTU's total rate base is $101,006,266, for capital investments that are prudent, used and useful, and reasonable and necessary. The rate base for Oncor NTU will be used in the calculation of Rate WDSS that Oncor NTU bills Oncor.
>
> . . . .
>
> 99A. The cash working capital amounts approved by this Order are just and reasonable.

According to the Order on Rehearing, Findings of Fact 49A and 99A were added for "accuracy and completion."

Other Findings of Fact that were the subject of Oncor's proposed "Technical Corrections" were modified "for accuracy," and new Findings of Fact were added "for completeness and to specifically address the statutory standards under the Public Utilities Regulation Act." Similarly, new Conclusions of Law were added to reflect that Oncor had demonstrated compliance with Section 39.918(c), (d)(1), (d)(2), and (e) of the Utilities Code. *See* Tex. Util. Code § 39.918 (regulating how transmission and distribution utilities operate temporary facilities in a significant

power outage). Similarly, the Commission added Conclusion of Law 24B, which states:

> 24B. Oncor's costs of leasing and operating temporary emergency electric energy facilities in the amount of $3,146,148 million are reasonable and necessary costs under PURA § 39.918(h)(1).

Although some of the intervenors filed subsequent motions for rehearing challenging the Order on Rehearing, Oncor did not. Rather than filing a second motion for rehearing, Oncor filed a petition for judicial review in district court.

**The PUC's Plea to the Jurisdiction**

The PUC moved to dismiss Oncor's petition for lack of jurisdiction because Oncor failed to file a second motion for rehearing following the Order on Rehearing. Oncor responded that it was not required to file a second motion for rehearing because the Order on Rehearing did not address the substantive issues raised by Oncor in its first motion for rehearing and in its petition for judicial review.

The district court granted the Commission's plea to the jurisdiction and dismissed Oncor's petition for judicial review. This appeal followed.

## ANALYSIS

### I. Standard of Review and Governing Law

Sovereign immunity deprives courts of subject-matter jurisdiction to hear cases against the State and its agencies unless the Legislature has waived that immunity. *Texas Health & Human Servs. v. Pope*, 674 S.W.3d 273, 280 (Tex. 2023). A claim of immunity implicates a court's subject-matter jurisdiction and is properly raised by a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133

5

S.W.3d 217, 225–26 (Tex. 2004). Whether a court has subject matter jurisdiction is a question of law, and accordingly we review a trial court's ruling on a plea to the jurisdiction de novo. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020).

If the Legislature assigns exclusive or original jurisdiction to an administrative body—the PUC in this case—then no right to judicial review exists "unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Texas Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist. by & through Crigler*, 694 S.W.3d 752, 757–58 (Tex. 2024) (quoting *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000)). If a statute provides a right of judicial review, ordinarily the district court does not acquire jurisdiction until the party exhausts its administrative remedies with the agency. *Id.*

The Administrative Procedure Act (APA) requires a timely motion for rehearing as a prerequisite to an appeal in a contested case. Tex. Gov't Code § 2001.145(a). Compliance with this statutory prerequisite is necessary to effect a waiver of sovereign immunity. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012) ("[I]t is the Legislature's function to determine what steps a litigant must take before the state's immunity is waived."); *see also* Tex. Gov't Code § 311.034 (stating that statutory prerequisites to suit "are jurisdictional requirements in all suits against a governmental entity").

## II.  The Parties' Arguments

Here, it is undisputed that Oncor timely filed a motion for rehearing following the PUC's Initial Order. Consequently, in the district court and now on appeal, the parties' jurisdictional dispute centers on whether Oncor was required to file a second motion for rehearing in order to exhaust its administrative remedies and to

demonstrate subject-matter jurisdiction in its suit for judicial review of the PUC's Order on Rehearing.

Oncor asserts that Section 2001.146(h)(1) of the APA dispenses with the requirement of a second motion for rehearing in this case. That provision of the statute states:

> (h) A subsequent motion for rehearing is not required after a state agency rules on a motion for rehearing unless the order disposing of the original motion for rehearing:

> (1) modifies, corrects, or reforms in any respect the decision or order that is the subject of the complaint, other than a typographical, grammatical, or other clerical change identified as such by the agency in the order, including any modification, correction, or reformation that does not change the outcome of the contested case[.]

Tex. Gov't Code § 2001.146(h)(1).[3]

In this case, Oncor asserts that, applying Section 2001.146(h)(1), it was not required to file a subsequent motion for rehearing from the Commission's Order on Rehearing for two reasons. First, Oncor asserts that the Order on Rehearing did not "modif[y], correct[], or reform[] in any respect the decision or order that is the subject of the complaint." Specifically, Oncor argues that the phrase "the decision or order that is the subject of the complaint" refers to the challenging party's

---

[3] Independently, Section 2001.146(h)(2) states that a subsequent motion for rehearing is also not required unless the order on rehearing "vacates the decision or order that is the subject of the motion and provides for a new decision or order." Tex. Gov't Code § 2001.146(h)(2). There is no dispute that the PUC never vacated its initial order, and therefore this provision does not apply and does not provide an alternative basis for concluding that a second motion for rehearing was required.

7

complaints in its motion for rehearing that the party intends to appeal. Oncor thus reasons that because the Commission's Order on Rehearing did not modify, correct, or reform the initial decision or order with regard to issues on which Oncor seeks judicial review, no subsequent motion was required. Second, Oncor asserts in the alternative that, even if the Commission's Order on Rehearing modified the original order "that is the subject of the complaint," Oncor is relieved of the requirement to file a subsequent motion for rehearing because all the modifications requested by Oncor as "Technical Corrections" and made by the Commission constitute "typographical, grammatical, or other clerical change[s]."

The PUC disagrees, contending that a subsequent motion for rehearing is required any time the agency modifies, corrects, or reforms its order in any respect, with the exception of clerical errors that the agency identifies as such in the order. In other words, the PUC asserts that the phrase "the decision or order that is the subject of the complaint" refers to any order on rehearing issued by the agency, so long as changes were made to the order. As to Oncor's alternative argument, the PUC asserts that any modifications not specifically designated by the agency as typographical, grammatical, or clerical require the filing of a subsequent motion for rehearing to waive sovereign immunity and confer jurisdiction on the trial court.

In two issues on appeal, Oncor asserts that the district court erred in dismissing its petition because (1) the Order on Rehearing did not make any modifications that were the subject of Oncor's complaints; and, in the alternative, (2) the modifications made were typographical, grammatical, or otherwise clerical. We will address these issues in reverse order for ease of analysis.

**III. The PUC's order on rehearing did not identify its modifications as only typographical, grammatical, or clerical changes.**

Oncor contends that it was not required to file a second motion for rehearing because the only changes or modifications made to the PUC's Initial Order after its motion for rehearing were clerical in nature. In making this argument, Oncor asks us to apply the law relating to motions nunc pro tunc as to when a change to an order is clerical in nature as opposed to an error resulting from judicial reasoning, a substantive error. *See Texas Dept. of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 167 (Tex. 2013). Oncor admits that the PUC did not expressly state in its Order on Rehearing that its changes were typographical, grammatical, or clerical in nature. Rather, Oncor contends that the memorandum from Commissioner Cobos indicates that the changes to the Commission's order were intended as such, describing the changes as for "accuracy," "completeness," and "clarity," for example. We can easily dispose of this argument because the language of the applicable statute forecloses it.

The jurisdiction of the district court over this contested case depends on the statutory interpretation of Section 2001.146(h). Our analysis begins with the plain text of the statute. *See Pape Partners, Ltd. v. DRR Fam. Props. LP*, 645 S.W.3d 267, 272 (Tex. 2022). If, taking the complete statute into account, "[w]here text is clear, text is determinative" of intent. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Where the statutory text is unambiguous, we adopt a construction supported by the statute's plain language, unless that construction would lead to an absurd result. *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020) (orig. proceeding).

The APA provides that one reason a party would not have to file a subsequent motion for rehearing following an agency's order on rehearing is if the agency's

order makes solely "a typographical, grammatical, or other clerical change *identified as such by the agency in the order*." Tex. Gov't Code § 2001.146(h)(1) (emphasis added). It is undisputed that the PUC did not specifically state in its Order on Rehearing that the changes made to its Initial Order were typographical, grammatical, or clerical in nature. That fact belies Oncor's reasoning that a commissioner's comments can suffice to make changes clerical or that the law relating to judgments nunc pro tunc controls. The statute requires that the agency designate its changes as purely clerical, grammatical, or typographical in the body of the order at issue for them to be considered as such. The PUC made no such designation in its Order on Rehearing. We conclude that Oncor was not excused from filing a second motion for rehearing on the basis that the modifications in the PUC Order on Rehearing were merely clerical in nature.

## IV. The plain text of the statute required Oncor to file a second motion for rehearing.

In light of our holding in Part III, above, we next consider Oncor's argument that it was not required to file a subsequent motion for rehearing because the Order on Rehearing did not modify "the decision or order that is the subject of the complaint." The remaining text of the statute provides that a second motion for rehearing is not required unless the order on rehearing

> modifies, corrects, or reforms in any respect the decision or order that is the subject of the complaint, ~~other than a typographical, grammatical, or other clerical change identified as such by the agency in the order,~~ including any modification, correction, or reformation that does not change the outcome of the contested case[.]

*Id.* § 2001.146(h)(1) (modified for illustrative purposes).

Here, it is undisputed that the PUC's Order on Rehearing modified the Initial

Order, but also that the Order on Rehearing did not change the ultimate outcome of the case. The statute provides that no further motion for rehearing is required unless the decision or order is modified "in any respect." The statute also provides in its final clause that a modification requiring a second motion for rehearing includes "any modification, correction, or reformation that does not change the outcome of the contested case." *Id.* In other words, whether the decision on rehearing changed the outcome of the contested case is not dispositive as to whether the decision on rehearing "modif[ed], correct[ed], or reform[ed]" the original decision or order in a non-clerical way.

Thus, in deciding whether Oncor was required to file a second motion for rehearing, the issue becomes whether the PUC modified "in any respect" its Initial Order that was the "subject of the complaint" made by Oncor in its motion for rehearing. Oncor argues that if the Order on Rehearing does not modify, correct, or reform the specific portions of the order that it challenged in its first motion for rehearing *and* from which it intends to seek judicial review, then no subsequent motion is required. It reasons that it made only two substantive arguments in its initial motion for rehearing and that it also requested that the PUC make "Technical Corrections" to ensure the order's accuracy. Oncor reasons further that since the only changes to the PUC's Initial Order in response to its motion for rehearing related to its requests for "Technical Corrections" and not to its two substantive arguments, it did not need to file a second motion for rehearing. According to Oncor, a party must file a second motion for rehearing only if an agency modifies its order with respect to an issue that a party intends to complain about on appeal. To hold otherwise, Oncor argues, makes the statute pointless because then every party will have to move for rehearing every time an agency modifies its order on rehearing in any respect. We disagree with Oncor's contention, based on the statute's plain

11

language.

Reviewing the entire statutory text of Section 2001.146, titled "Motions for Rehearing: Procedures," we note that the statute consistently addresses "the decision or order that is the *subject of the motion*." *See* Tex. Gov't Code § 2001.146(a) ("A motion for rehearing in a contested case must be filed by a party not later than the 25th day after the date the decision or order that is the *subject of the motion* is signed . . . ."), (b) ("A party must file with the state agency a reply, if any, to a motion for rehearing not later than the 40th day after the date the decision or order that is the *subject of the motion* is signed . . . ."), (c) ("A state agency shall act on a motion for rehearing not later than the 55th day after the date the decision or order that is the *subject of the motion* is signed . . . ."), (e) ("An extension may not extend the period for agency action beyond the 100th day after the date the decision or order that is the *subject of the motion* is signed."), (f) ("In the event of an extension, a motion for rehearing is overruled by operation of law on the date fixed by the order or, in the absence of a fixed date, the 100th day after the date the decision or order that is the *subject of the motion* is signed.") (emphasis added). Not until the statute addresses the required contents of a motion for rehearing in subsection (g) does it use the phrase "*the subject of the complaint*." *Id.* § 2001.146(g) ("A motion for rehearing must identify with particularity findings of fact or conclusions of law that are the *subject of the complaint* and any evidentiary or legal ruling claimed to be erroneous.") (emphasis added). Specifically, under subsection (g) the motion must identify "the subject of the complaint" and "any evidentiary or legal ruling claimed to be erroneous," and must state "the legal and factual basis for the claimed error." *Id.*

When we apply the statutory interpretation precepts stated above, we conclude the statute is not ambiguous and clearly uses a different phrase—the subject of the

complaint—when referring to the contents of a motion for rehearing. By changing the phrase used from "the subject of the motion" to "the subject of the complaint," the Legislature has expressed an intent to shift the focus from the subject of the motion as a whole, to the subject of the complaint within the motion. In other words, the operative consideration in deciding whether a party must file a second motion for rehearing is whether the party made a particular complaint in its motion for rehearing and then whether the agency modified its initial decision or order in any respect on the subject matter of that complaint.

Oncor, however, takes this analysis a step further and contends that if an agency order on rehearing makes a modification that was the subject of the complaint in the motion for rehearing, but is not a complaint on which a party intends to seek judicial review, then the party does not need to file a second motion for rehearing. Consistent with this view, Oncor does not believe its "Technical Corrections" can be considered the subject of its complaint, even though they were included in its motion for rehearing and even though the PUC modified its order on some of those subjects. This interpretation does not comport with the plain language of the statute.

We hold the statute means exactly what it says—if a party moves for rehearing and the agency modifies its decision or order *in any respect*, even favorably, on the subject of a complaint made in that motion for rehearing, then that party must file a second motion for rehearing to preserve its right to judicial review. This interpretation creates a rule that a party does not have to file a second motion for rehearing, unless the agency modifies its order in some way that the agency does not explicitly designate as typographical, grammatical, or clerical and that modification is related to the subject of the complaints made in the motion for rehearing. A modification may be purely technical in the view of the party filing the motion for rehearing, but if it is requested by a party and the agency makes a modification to

13

the order on the subject of the modification requested, even if favorable, the requesting party must file a second motion for rehearing.

Oncor complains that this construction requires all parties to file a second motion for rehearing every time an agency modifies its decision or order on rehearing. Not so. Under the plain language of Section 2001.146(h), a party need not file a second motion for rehearing unless an agency modifies its original decision or order in any respect on the subject matter of the party's motion for rehearing. The PUC argues, conversely, that any time an agency modifies its original order in a manner it does not designate as clerical, then a party must always file a second motion for rehearing. Neither party is entirely correct, as the following illustration details. If, in an administrative proceeding like the one below, in which many parties moved for rehearing, Party X moves for rehearing on separate grounds than Party Y and the agency modifies its order only with respect to Party X's complaint on rehearing and not Party Y's, then Party Y is under no requirement to file a second motion for rehearing because the agency has not modified its original order in any respect that is the subject of Party Y's complaint. On the other hand, if the agency also modifies its decision and order relating to the subject of a complaint made in Party Y's motion for rehearing, then Party Y would also have to file a second motion for rehearing as a prerequisite to seeking judicial review.[4] In other words, in a multi-party dispute, an agency's order on rehearing does not automatically require all parties to file a second motion for rehearing; only if an agency modifies its decision or order with respect to the subject of a party's complaint is a second motion for rehearing required from that party.

---

[4] As referenced in Part III, above, this is true unless the agency specifically provides in its order that its modifications relating to Party Y's complaint are typographical, grammatical, or clerical in nature.

Here, Oncor moved for rehearing, and it is undisputed that the PUC modified its Initial Order on a subject raised in that motion by modifying its order favorably to Oncor in some respects and not modifying it in other respects. That the agency did not modify its order on Oncor's primary complaints is inapposite because the PUC made modifications to its Initial Order on the subjects of complaints made in Oncor's motion for rehearing and those modifications were not identified as "clerical changes" by the PUC in its order. Under these circumstances, Oncor was required file a second motion for rehearing as a statutory prerequisite to its suit for judicial review. Any other result fails to give effect to the statute's plain text. *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 848 (Tex. 2024) (concluding that courts must "refrain from rewriting text that lawmakers chose") (quoting *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014)). We overrule Oncor's issues on appeal.

## CONCLUSION

We affirm the district court's order granting the PUC's plea to the jurisdiction.


/s/Scott K. Field
Scott K. Field
Justice


Before Justices Field, Farris, and Chief Justice Tracy Christopher, sitting by assignment (Farris, J., dissenting).